## JOHNSON, VanFIELD, NEAL AND CHAPMAN v. STATE

[No. 260, September Term, 1964.]

530

532

*Decided May 5, 1965.*

The cause was argued before HAMMOND, MARBURY, SYBERT, OPPENHEIMER and BARNES, JJ.

*Edward J. Bagley,* with whom was *Joseph S. Casula* on the brief, for appellants.

*Robert J. Martineau, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *Arthur A. Marshall, Jr.* and *Edward P. Camus, State's Attorney* and *Assistant State's Attorney,* respectively, *for Prince George's County,* on the brief, for appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

The appellants were indicted by the Grand Jury for Prince George's County for the following crimes: No. 4913 charged the four with rape, assault with intent to rape, and assault and battery. No. 4914 charged them with assault with intent to murder, assault with intent to maim, and assault and battery. No. 4915 charged the four with robbery with a deadly weapon, assault with intent to rob with a deadly weapon, robbery, assault with intent to rob, assault and battery, larceny, and receiving stolen goods. No. 4916 charged kidnapping. All four indictments alleged the various crimes were committed upon Mary Haymaker on January 3, 1964. Each appellant pleaded not guilty and elected to be tried by the court without a jury; they were tried together by Judges Ralph W. Powers and William B. Bowie. At the end of the State's case, motions for judgment of acquittal were granted as to all counts in Nos. 4914 and 4915 and were denied as to all counts in Nos. 4913 and 4916. At the conclusion of the case the court found the appellants guilty of the first count of No. 4913 which charged rape and No. 4916 which charged kidnapping. After motions for a new trial were denied, the court sentenced each of the appellants to life imprisonment. This appeal is from those judgments.

The appellants contend that they were convicted on the basis of evidence obtained by an unlawful search and seizure in violation of the Fourteenth Amendment; that it was reversible error for the trial court to deny appellants' motion for directed verdicts on the rape and kidnapping indictments after the court had found not guilty verdicts on the assault and battery counts in the other two indictments; and that there was not legally sufficient evidence produced in the case to sustain the conviction of rape. We shall consider these contentions in a somewhat different order.

534

*The sufficiency of the evidence*

Mary Haymaker, the prosecuting witness, age 38, testified that on the night of January 3, 1964 she was returning home from a restaurant in Laurel where she had stopped for something to eat and drink. While driving on the Laurel-Bowie road, she decided to stop by the Railroad Inn and take some food home. As she pulled into the parking lot of the Railroad Inn, she saw some Negroes standing in the foreground. She was hesitant about getting out of her car but "all of a sudden there was a car parked right where I get out on my left-hand side of the car. And they pulled up and jumped out and opened my car door and carried me out bodily and put me in their—they had a convertible—threw me in on the floor of the back." She testified that the car was a '59 Cadillac convertible, light color and light top and that there were four men, two of whom had guns. The car drove away at a fast rate of speed. Mrs. Haymaker was held on the floor in the back. She attempted to scream and struggle but was held down by her assailants. Whenever she would say something, she would "get a knock on the face or a hit in the mouth or hit in the sides." One of her assailants, whom she later identified as the appellant Neal, held a gun in his hands and threatened her. Approximately a half hour later, the car became stuck in the mud in a wooded area, later identified as Mitchellville, in Prince George's County, where Mrs. Haymaker testified her stockings and undergarments were removed and each of the four men raped her in the back seat of the automobile. Thereafter, the appellant Neal took her about 100 feet from the car "back in the woods, back in the forest." Twice she got away from Neal, but he caught her each time and then threw her down, beat her, took the back of her head and buried it in the snow and mud. The next thing Mrs. Haymaker remembers is running towards a light which was in a trailer, later identified as the home of Richard W. Proctor. She pounded on the door of the trailer, was admitted by Mr. Proctor and told him that she had been attacked by a number of men. She was given some treatment in the trailer by Proctor and his wife. Proctor sent his brother-in-law, Jerome Johnson, (a cousin of the appellant, Lawrence Johnson) to the Prince

George's Police Station for assistance, and two policemen, in separate cars, followed him to the trailer.

One of the policemen was Corporal O'Neil. On the way to the trailer, Corporal O'Neil saw a light-colored Cadillac convertible in the driveway to the farm, with a truck by it. There were several Negroes standing nearby. Jerome Johnson told the corporal the car did not belong there. Corporal O'Neil found Mrs. Haymaker in the trailer, her face badly bruised and her hands and legs scratched. She told him she had been attacked by several Negroes, in a light-colored Cadillac convertible. The corporal immediately put out a look-out in accordance with Mrs. Haymaker's report. Officer Welsh, the other policeman who went to the Proctor trailer in a separate car, observed the Cadillac and was in touch by radio with the station.

Mrs. Haymaker was taken in an ambulance to the hospital, where she was confined a week. At the hospital, she identified the appellants from a lineup photograph as the men who had attacked her. She subsequently identified each of the appellants at the trial.

A white coat and black purse taken by the police from the trunk of a light-colored convertible Cadillac car, owned by the appellant, Lawrence Johnson, under circumstances which will be hereafter discussed, were identified by Mrs. Haymaker as hers. In addition, two rings and a cigarette lighter, also identified by Mrs. Haymaker as her property, were found in Sheriff Walcott's car on January 4, behind the seat where the appellant Neal was sitting, after his apprehension. Mrs. Haymaker testified she had all of these items with her on the night of January 3 but had not seen them since.

Jerome Johnson and several of his brothers, who live on their father's farm a short distance from the Proctor trailer at the end of the road on which the Cadillac became stuck on the night of the alleged crime, testified that they came across the Cadillac sometime around midnight and attempted to free it from the mud. Their cousin, the appellant Lawrence Johnson, and the appellants VanField and Chapman, were identified by Jerome Johnson and his brothers as being at the automobile. After unsuccessfully attempting to free the Cadillac, Jerome Johnson

536

and his brothers obtained a truck and towed the Cadillac out of the mud.

Lawrence Johnson was the only one of the four appellants who testified at the trial. He stated that Mrs. Haymaker was in the parking lot near the Railroad Inn at approximately 11:30 P.M. on January 3 when he and the other appellants came out of another restaurant by the parking lot. Johnson said that Mrs. Haymaker was in a drunken condition and requested she be taken with him and the other appellants. According to Johnson, she wanted to go some place where she could not be seen, so he took her with the other appellants to the isolated place on the Norman Johnson farm, where the automobile became stuck. He stated further that Neal and Mrs. Haymaker went off into the woods as he, VanField and Chapman attempted to free the automobile. Johnson testified that he knew nothing about any alleged robbery or beating of Mrs. Haymaker. He said that, while in the car, he did not see any attack on Mrs. Haymaker, that while he was driving the car Mrs. Haymaker was on the front seat and that, when the car became stuck, he went to his cousin's house and when he returned, Mrs. Haymaker was no longer there.

On the State's testimony, if believed by the triers of the facts, as it obviously was, there was ample evidence to enable the court to be convinced of the guilt of the accused beyond a reasonable doubt. Indeed, there was legally sufficient evidence on the testimony of the prosecutrix alone, which, as a matter of law, need not be corroborated. *Leek v. State,* 229 Md. 526, 528, 184 A. 2d 808 (1962) and cases therein cited. There was material corroboration of her testimony, even apart from the physical evidence obtained from the Cadillac and the sheriff's car, including her condition when she went to the Proctor trailer, and the injuries which required a week's treatment in the hospital.

The appellants contend that there is not sufficient evidence to sustain Mrs. Haymaker's claim that sexual intercourse had been had with her by force. They base this contention on the fact that the doctor who examined her testified he found no evidence of spermatozoa in her. The doctor also testified, however, that she was in the middle of her menstrual period and that because

of her condition it would not be likely that any spermatozoa would have remained had she had intercourse at the time of the alleged attack.

The evidence was legally sufficient to sustain the convictions.

### The legality of the search and seizure

After Corporal O'Neil had initiated the first look-out, on interviewing Mrs. Haymaker, that several colored males in a white or light-colored Cadillac were wanted for rape, Jerome Johnson and Proctor, who had helped to free the Cadillac from the mud, told the policemen that the automobile in question also had Maryland license plates and an AAA sticker on the rear. A second look-out was issued containing this information.

Deputy Sheriff White, of Prince George's County and by Deputy Sheriff Walcott, were stopped at a gas station in the area of Sheriff Road and George Palmer Highway, about 3:10 A.M. on January 4; Mrs. Haymaker had arrived at the Proctor trailer and made her complaint only three or four hours before. Deputy Sheriffs White and Walcott testified that while they were at the gas station they received two messages over the radio stating that all cars were to be on the lookout for a white Cadillac bearing Maryland registration, occupied by several colored males, wanted for rape. The second look-out stated that the wanted Cadillac was light-colored, white or yellow, with an AAA decal on the rear. After receiving the second radio message, the sheriffs saw a 1959 light-colored convertible Cadillac go through a stop sign at George Palmer Highway. They pulled behind the Cadillac and observed that there were several colored males in it. Sheriff Walcott noticed that the automobile had an AAA decal on the rear. Sheriff White advised the Prince George's County police radio dispatcher that he was apprehending the vehicle and called for assistance. As the two deputies were getting out of their car, they were advised over the radio that the persons in the automobile were armed. The deputies drew their guns, went to the Cadillac, identified themselves as police officers, told the three persons in the automobile they were under arrest and handcuffed them.

The three persons in the car were later identified as the appellants, Lawrence Johnson, VanField and Neal (the appellant,

Chapman, was not arrested until several days thereafter). The three appellants were placed in the sheriff's automobile. Deputy Walcott looked in the Cadillac and found a revolver underneath the right front seat. He opened the trunk and observed the white coat and black purse, subsequently identified as the property of Mrs. Haymaker. He did not touch anything, leaving the articles for further investigation. The appellants were taken to the police station in Prince George's County and a crane took the Cadillac to the same station. At the station, at about 5:30 A.M., Deputies White and Walcott again looked in the automobile and found another pistol under the driver's seat. At the police station, two rings and a cigarette lighter, which Mrs. Haymaker later identified as her property, were found in Sheriff Walcott's car behind the seat where the appellant Neal had been sitting while he was being taken by the deputies to the police station. Later in the morning of January 4, the coat and purse were removed from the trunk and, on January 7, sweepings and dust samples were taken from the Cadillac by another officer. All of these articles were admitted as evidence in the trial over the appellants' objections.

Deputy White testified that there was no question in his mind from the look-outs which had been received that the Cadillac that was apprehended was the car whose description he had received on the look-outs. While the first look-out was for a white Cadillac, the second was for a white or yellow car. The AAA decal in the rear also corresponded with the description which had been given. There were some minor conflicts in the testimony of the two deputies and in the testimony in respect of the look-outs which had been put out.

The lower court held that, on the evidence, there was probable cause for the arrest; that the police had reasonable cause to believe that a rape had been committed, and that, from the information given by Mrs. Haymaker to the police and transmitted over the radio, the deputies had reasonable cause to believe that the persons in the car were wanted in connection with the alleged rape. We agree.

There was no warrant for the arrest of the appellants or for the seizure and search of the automobile. We have repeatedly

held, however, that there can be a legal arrest without a warrant for a felony when the arresting officer has reasonable grounds to believe that a felony has been committed and that the persons arrested have committed it. *Mercer v. State,* 237 Md. 479, 482, 206 A. 2d 797 (1965) and cases therein cited. Information placed on a look-out prepared by a police organization, of which the arresting officer is a part, may constitute probable cause for the arrest. *Mercer v. State, supra,* at 483; *Farrow v. State,* 233 Md. 526, 531-32, 197 A. 2d 434 (1964). The testimony in this case supports the conclusion of the court below that the arrest was legal.

When there has been a legal arrest, the arresting officers may search the persons arrested and the automobile under their control; any articles seized in such search are admissible against the accused. *Braxton v. State,* 234 Md. 1, 4, 197 A. 2d 841 (1964); *Brown v. State,* 207 Md. 282, 286, 113 A. 2d 916 (1955). The revolver found under the right front seat of the car immediately following the arrest was clearly admissible.

The rings and cigarette lighter found in Sheriff Walcott's car where the appellant Neal had been sitting were not seized in violation of the Fourth Amendment (as applied to the states through the Fourteenth). Neither the articles nor the automobile were under the control of any of the appellants. See *United States v. Hayden,* 140 F. Supp. 429 (D. C. Md. 1956).

The appellants contend, however, that certain aspects of the search and seizure were too far removed from the arrest in time and not incident thereto, citing *Preston v. United States,* 376 U. S. 364 (1964). The coat, purse and second revolver, admitted in evidence, were found in the car several hours after it had been taken to the police station, and the sweepings and dust samples were taken several days thereafter. However, unlike *Preston,* in this case, the automobile, according to the information previously given by Mrs. Haymaker which the officers had reasonable cause to believe was true, had been used as an instrument in the perpetration of the alleged crime; Mrs. Haymaker stated that she had been raped in the back seat. The coat and purse had been seen in the trunk of the car at the time of the arrest and could legally have been seized at that time. Where there has been a valid arrest, property found in

connection with the arrest which tends to establish the commission of the crime charged may be held by the officers for evidence. If the arrest is lawful, the seizure is lawful, if the property is of an evidentiary nature. *Knotts v. State,* 237 Md. 417, 421, 207 A. 2d 100 (1965); *Scarlett v. State,* 201 Md. 310, 317, 93 A. 2d 753 (1953); *Silverstein v. State,* 176 Md. 533, 541, 6 A. 2d 465 (1939); Cornelius, *Search and Seizure,* § 49 (37) (2d ed. 1926). The automobile itself could have been offered in evidence at the trial. Having lawfully seized it, the police had the right to examine it after the seizure for evidence in connection with the crime. In any event, the sweepings and dust samples were introduced to show that Mrs. Haymaker was in the car and to place the car at the scene of the alleged rape. The appellant Johnson testified that Mrs. Haymaker was in the car, and his statement was not contradicted; there was voluminous other evidence that the car was at the place described.

We hold that the arrest, search and seizure were lawful and that no rights of the appellants were violated.

### The alleged inconsistent judgments

The appellants contend that the evidence of assault required to support the convictions on the rape and kidnapping charges was the same as that on which the appellants were found not guilty in Nos. 4914 and 4915, and that the acquittal as to the assault and battery charges in the other cases necessitates the acquittal on the greater offenses of rape and kidnapping.

When the court below granted the motions for acquittal with respect to Trials No. 4914 and 4915, Judge Powers said:

"In 4914 and 4915, in each one of those cases there is a count involving assault and battery. The decision of the Court with respect to these motions is not to be construed as indicating that there is an insufficiency of evidence in the case as to an assault and battery in connection with the rape case."

In further discussion with the State's Attorney as to the action taken by the court in granting the motions in trials No. 4914 and 4915, Judge Powers said:

"We dismissed, or we granted the motion with respect to that case, but made a statement, we thought, making it clear that even though in the assault and battery count in that particular case there was a judgment of acquittal, that was not to be confused with the assault and battery charged under the rape case, because we concluded that there was sufficient evidence so that no motion would be granted with respect to assault and battery in the rape case.

"We granted the motion on all counts in those two cases. We did not grant the motion as to any counts in the rape case, and of course the kidnapping case had only one count.

"Then we made it clear that we were not holding that there was an insufficiency of evidence as to assault and battery in 4913, the case in which we did not grant any motion for judgment of acquittal."

Assault is an essential ingredient of both rape and kidnapping, of which the appellants were convicted. When the lesser offense is a necessary part of the larger, a conviction or acquittal of the lesser crime bars a prosecution for the greater. See *Bennett v. State,* 229 Md. 208, 212-213, 182 A. 2d 815 (1962) and *Veney v. State,* 227 Md. 608, 612-613, 177 A. 2d 883 (1962) and cases therein cited. The appellants' position is that, whether this principle rests on the rule against double jeopardy or *res judicata,* it applies to inconsistent verdicts rendered on different counts, or different indictments, at the same trial, despite the statements made by the lower court when it granted the motions for judgments of acquittal.

We have held that inconsistent verdicts of guilty under different counts of the same indictment, when both counts depended upon the same alleged acts, cannot stand. *Tucker v. State,* 237 Md. 422, 425, 206 A. 2d 691 (1965) and cases therein cited. When there has been a conviction by a jury on one count and an inconsistent acquittal on another count, we have held that the conviction may stand. *Ledbetter v. State,* 224 Md. 271, 167 A. 2d 596 (1961) ; *Leet v. State,* 203 Md. 285, 293-294, 100 A. 2d 789 (1953) and cases therein cited. In these

cases, ·we followed *Dunn v. United States,* 284 U. S. 390 (1932),[1] in which Justice Holmes, giving the opinion for the majority of the Court, said "[t]hat the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters." The Justice quoted with approval the statement made in *Steckler v. United States,* 7 F. 2d 59, 60 (2d Cir. 1925) :

> "The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity." 284 U. S. at 393.

In *United States v. Maybury,* 274 F. 2d 899 (2d Cir. 1960), the defendant had been tried in the District Court before a judge without a jury on two counts of an indictment. The first count charged Maybury with forging a check, the second, with uttering the check with intent to defraud the United States. The judge acquitted Maybury on the first count but found him guilty under the second. On appeal, it was held by the majority of the Circuit Court of Appeals that, on the facts presented, *Dunn* was not applicable and that the acquittal on the first count was inconsistent with the conviction on the second.[2] The conviction was reversed and a new trial ordered.

Judge Friendly, in delivering the opinion of the majority of the court, traced the history of the jury as an alternative, not

---

1. In Sealfon v. United States, 332 U. S. 575 (1948) it was held that an acquittal, by a jury, of conspiracy to defraud the United States precluded a subsequent prosecution for commission of the subsequent offense. Dunn was not distinguished or cited. As to the impingement of the holding in Sealfon upon Dunn, see Bickel, Judge and Jury—Inconsistent Verdicts in the Federal Courts, 63 Harv. L. Rev. 649, 651 (1953).

2. In McElheny v. United States, 146 F. 2d 932 (9th Cir. 1944) the Dunn rule was applied to a criminal trial before a judge. There was no discussion of the question.

to trial by judge, "but to the ancient methods of compurgation and ordeal." He pointed out that, as shown by *Steckler* (decided by the same court) and *Dunn,* it has not yet been deemed wise that the rationalization of the jury as a judicial body "should be carried to the point of requiring consistency in a jury's verdict in a criminal trial."

Another special consideration underlying the rule of *Steckler* and *Dunn,* he said, "is the requirement of unanimity." Judge Friendly continued:

> "None of these considerations is fairly applicable to the trial of a criminal case before a judge. There is no 'arbitral' element in such a trial. While the historic position of the jury affords ample ground for tolerating the jury's assumption of the power to insure lenity, the judge is hardly the 'voice of the country,' even when he sits in the jury's place. * * * There is no need to permit inconsistency in the disposition of various counts so that the judge may reach unanimity with himself; on the contrary, he should be forbidden this easy method for resolving doubts. * * * We do not believe we would enhance respect for law or for the courts by recognizing for a judge the same right to indulge in 'vagaries' in the disposition of criminal charges that, for historic reasons, has been granted the jury." 274 F. 2d at 903.
>
> "[W]e reverse for inconsistency * * * because we can have no confidence in a judgment convicting Maybury of one crime when the judge, by his acquittal of another, appears to have rejected the only evidence that would support the conviction here." 274 F. 2d at 905.

We do not regard the result reached by Judge Friendly in his lucid and scholarly opinion to mean that, in the case before us, even on the reasoning followed in *Maybury,* the convictions must be set aside.

Unlike the situation presented in *Maybury,* in this case there is no doubt of what the lower court meant to do. The record shows beyond controversy that the court was not exercising leniency, or resolving doubts by inconsistent findings. It was

not indulging in vagaries. What the judges meant to do and why is made clear by the record. They dismissed all the charges against the appellants in connection with the indictments charging assault with intent to murder and robbery with a deadly weapon, but, in doing so, they explicitly stated that their decision as to those indictments was not to be construed as a finding of insufficient evidence of assault and battery as a base for the charges of rape and kidnapping. They were protecting the appellants' rights on charges of crimes which, in essence, the judges did not believe they had committed, but without prejudice to the findings on the charges of rape and kidnapping and each necessary ingredient of those crimes. All this the judges announced at the time of their granting of the motions of acquittal as to trials Nos. 4914 and 4915 and counsel for the appellants stated, in open court, that they understood what the judges intended to do.

It would have been better practice, if, as the State suggested, the lower court had reserved its rulings on the assault and battery counts of the two indictments as to which it granted the motions for verdicts of acquittal. On their face, if what the judges said be disregarded,[3] the verdicts would be inconsistent.

---

3. The appellants contend that we must disregard what the judges said; that their statements were mere surplusage, and only their formal action has legal effect, citing State v. Coblentz, 169 Md. 159, 166-168, 180 Atl. 266 (1935). In that case, the defendant had been indicted, in Howard County, for a criminal violation of the State banking laws. He filed a plea of res judicata, based on a prior acquittal in Frederick County by two judges sitting without a jury, on another charge in connection with the banking laws. In the Frederick County case, the State had to prove that the bank was insolvent on a certain date and that the defendant knew the bank was insolvent. We reversed a judgment for the defendant on the State's demurrer to the plea. In our opinion, we stated the defendant relied upon the statement of the Frederick County judges when they gave their verdict to the effect that the bank was insolvent but that the defendant was not aware of it. We said that statement had no place in the record and therefore was not admitted by the demurrer. The Coblentz case differs from the situation here before us. Reasons for the rendering of a verdict are not admissible, whether the verdict be by jury or judge, but resort may be had to what a judge said in order to interpret what he did. See

But the rendering of inconsistent verdicts, of itself, does not mean that the verdicts of conviction must be set aside if injustice has not been done. In *Leet v. State, supra,* followed in *Ledbetter v. State, supra,* we said "it does not follow that a conviction on one count may not stand because of an inconsistent acquittal on another count." 203 Md. at 293. While it is true that, in *Leet* and *Ledbetter,* as in *Dunn* and *Steckler,* the inconsistent verdicts were rendered by a jury, that fact, in our opinion, constitutes only one instance in which it may be determined that justice does not require a reversal. In *Maybury,* as we read it, the conviction was reversed, not only because the inconsistent verdicts were given by a judge, but because the appellate court could have no confidence in the judgment of conviction when the judge, by his acquittal of the defendant of one crime, appeared to have rejected the only evidence that would support his conviction of another.

There is no such lack of confidence here. The fairness of what the judges meant to do is apparent. What the judges did, in form, was in the professional sense inartistic, and in logic, inconsistent. What they did, in substance, was in accord with the proper administration of justice. The protection afforded persons accused of crimes by the principles of double jeopardy and *res judicata* is basic to our system of justice, but it is the fundament of these principles to which we look. Only a few months ago, in *Brown v. State,* 237 Md. 492, 207 A. 2d 103 (1965), we applied what we regarded as the essence of these rules to the situation there before us in favor of the accused, even though, technically, neither *res judicata* nor double jeopardy was applicable. Conversely, in this case, we hold that, when, regardless of the particular words the judges used, the effect of what they meant to do was clear, admittedly understood, and proper, there was no unfairness or infringement of the appellants' constitutional rights. The protection of society, which is

---

Greif v. Teas, 156 Md. 284, 295, 144 Atl. 231 (1929). It is not disputed, in this case, that the motions for directed verdicts of acquittal were granted; the question is, was that action inconsistent with the other verdicts of guilty. The judges' statements showed that the motions were granted expressly without prejudice to the other cases.

as basic to ordered liberty as the protection of the rights of the individual, is not to be jeopardized because, in doing what they did, the judges' terminology should have been more precise.

*Judgments affirmed.*