# JOHN M. STOCKER, JR. *v.* STATE OF MARYLAND

[No. 246, September Term, 1967.]

*Decided June 4, 1968.*

The cause was argued before MURPHY, C. J., and MORTON, ORTH, and THOMPSON, JJ.

*Beverly S. Pearson* for appellant.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William Linthicum, State's Attorney for Montgomery County, Andrew L. Sonner, Deputy State's Attorney for Montgomery County,* and *William Cave, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

Appellant was convicted of statutory nighttime burglary [1] of the dwelling of Ernest Burgdorf by a jury in the Circuit Court for Montgomery County, Judge John P. Moore presiding, and was sentenced to the custody of the Department of Correction for twenty years. He contends on this appeal:

1. That the trial court erred in allowing the prosecution, over appellant's objection and after the State presented its case, to abandon count 5 of the indictment, charging the appellant with the lesser offense of receiving stolen goods.

---

1. Section 30 (a) of Article 27 of the Maryland Code (1967 Repl. Vol.).

2. That the arrest of appellant was unlawful, and evidence obtained by search of his person should have been excluded.
3. That appellant was prejudiced by the trial court's refusal to hear testimony relating to a motion to suppress evidence out of the presence of the jury.
4. That there was insufficient evidence for the jury to find that the breaking and entry took place in the nighttime rather than in the daytime.

The record discloses that on September 17, 1966 at approximately 10:00 p.m., Henry Lehr, a resident of 4114 Edgevale Court in Chevy Chase, observed three men walking past the Clarkson home, four doors away. Lehr testified that he became suspicious because the three were only fifteen feet from the Clarkson house and appeared to be "sneaking around" as if "they did not want to be seen." When two of the men proceeded to the rear of the Clarkson home, Lehr called the police.

Captain Leahy of the Montgomery County Police Department heard a call over his car radio that three prowlers had been observed in Edgevale Court. Being in that vicinity, Leahy promptly responded to the call and was approximately one block from the origin of the complaint when he saw a man, who he later identified as the appellant, emerge from behind some shrubbery. Leahy shone his car lights on appellant and when appellant came near his car, Leahy shone his flashlight on him, told him he was a police officer, and asked whether he could be of help. Appellant responded to Leahy's statements by immediately fleeing in the direction of the East West Highway and the railroad bridge. Leahy testified that he had an opportunity to observe the appellant for approximately forty seconds and that he broadcast a description of him as being wanted for "investigation of prowling," that description being:

> "Man, five foot eight, well dressed, wearing a gray suit, no hat, and running in the general direction of the bridge—a white subject."

After broadcasting the description, Leahy proceeded to the Clarkson residence to investigate the prowler call, at which time he observed that "the Clarkson house had been entered by the back door," which had been "jimmied open" and "ripped

off." Leahy then rebroadcast appellant's description over his police radio, this time stating that he was wanted for investigation of burglary. Within three minutes after this broadcast, Leahy was advised that Officers Kiliany and Greeley had apprehended a suspect on East West Highway. Upon going to the scene of the arrest, Leahy observed that it was the appellant whom the officers had arrested. Eleven minutes had passed from the time Leahy first saw appellant to the time of his arrest.

Each arresting officer testified at the trial that they received a call over their car radio describing a suspect wanted for burglary; that the description was for a white male, neatly dressed, five foot, ten inches, dark hair, and wearing a gray suit. Within a few minutes thereafter, as they were near the bridge on East West Highway, the officers observed a person answering the description of the suspected burglar. When they approached him, he ran behind a car and was about to jump over a fence when he was arrested by the officers.

Appellant was preliminarily searched at the scene, and a large number of coins were discovered in his pockets. A more thorough search ensued at the police station, where the police removed his wallet containing $300.00 and $23.35 in coins, consisting of one 1900 silver dollar, $13.00 in half-dollars, $2.50 in Kennedy half-dollars, $4.75 in 1964 quarters, and $2.10 in 1964 dimes.

At a few minutes past eleven on the same evening, Mrs. Ernest C. Burgdorf, of 8107 Kentberry Drive, Bethesda, reported to the police that the kitchen door to her home had been broken open, the bedrooms ransacked and the following items taken: a mink stole, a watch, a diamond and sapphire ring, and $23.35 in coins of the denominations found in the appellant's pocket. Though the ring and watch were never recovered, the mink stole was later found in the front yard of 4107 Edgevale Court.

During the investigation of the Burgdorf burglary, Lt. La-Master removed a pink angora sweater from the bedroom, which had been thrown on the floor during the ransacking, and had it forwarded to the F.B.I. laboratory for processing, along with articles of appellant's clothing. The laboratory report indicated that approximately a dozen hairs which could have come from the sweater were located on appellant's jacket.

The sole witness for the defense was a numismatist who testified that the particular coins found on the appellant at the time of his arrest had no particularly distinctive markings which would make them readily identifiable.

## I

We see no merit in appellant's contention that the trial court committed prejudicial error by allowing the State to abandon the fifth count of the indictment (receiving stolen goods) after the trial had begun. Maryland Rule 711 provides that a *nolle prosequi* of the indictment may be entered by the State's Attorney only in open court. In *Boone v. State,* 3 Md. App. 11, 25, we held that if a *nolle prosequi* is entered without the consent of the defendant after trial has begun, jeopardy attaches because it operates as an acquittal. See Hochheimer, *The Laws of Crime and Criminal Procedure,* 2d Ed. § 152, p. 171. It is thus clear that appellant's argument that he might be subjected to a future indictment on the abandoned count is entirely groundless. In its brief, and in oral argument, the State conceded that its "abandonment" of the fifth count was the equivalent of its entering a *nolle prosequi,* and for the purposes of this case, we so consider it.

Appellant also maintains that the State's abandonment of the receiving count during trial constituted prejudicial error in that it removed his right to have the jury pass on the question of whether he was guilty of the lesser crime of receiving, rather than burglary. We disagree. Independent of the fact that the State has a right to "abandon" counts of the indictment after trial has begun, we think the jury was free to find from the evidence that appellant was only a receiver of stolen goods, and not the burglar, in which event, since the State had abandoned the receiving count, it would have been required to acquit the appellant of the burglary charge. We therefore see no prejudice in the State's abandonment of the receiving count.

## II

Nor do we find merit in appellant's contention that his arrest was illegal and that the evidence obtained from him incident thereto was improperly admitted against him at the trial. We think the arresting officers had abundant probable cause to be-

lieve a felony had been committed and that appellant had committed it. Leahy's information that prowlers had been observed in Edgevale Court, coupled with his observation of appellant emerging from the shrubbery in close proximity to the origin of that complaint, combined with the fact that appellant fled upon realization that he had encountered a police officer, followed by Leahy's immediately ensuing observation that the door of the nearby Clarkson home had been ripped off and the house entered, constituted in our judgment probable cause for him to believe that the felony of burglary had been committed; and, with equal probable cause, to believe that the appellant was involved in the commission of the burglary. Leahy's radio broadcast describing the suspected felon was overheard by the arresting officers, who, on the basis of that description, and information that a burglary had been committed, arrested the appellant in near proximity to the scene of the crime.

It is well settled that information placed on a "look-out" prepared by a police organization of which the arresting officers are a part, may constitute probable cause for the arrest. *Johnson v. State,* 238 Md. 528; *Barton v. State,* 2 Md. App. 52. We think the combined efforts of Capt. Leahy and Officers Kiliany and Greeley resulted in the lawful arrest of the appellant, so that the search of his person made incident thereto was likewise lawful.

### III

The appellant next contends that he was prejudiced by the refusal of the trial court to hear testimony relating to a motion to suppress evidence out of the presence of the jury in that, as a consequence of such refusal, the jury heard testimony with respect to two other crimes for which appellant was not on trial, *i.e.,* the Clarkson burglary [2] and larceny of certain coins found the next day near a fence where appellant had been observed when attempting to elude police. In *Terrell v. State,* 3 Md. App. 340, 361, we held that while it was better practice to make a preliminary determination as to the validity of an arrest out of the jury's presence, no prejudicial error would ordinarily

---

2. Appellant was not indicted for this offense.

result in not doing so in those cases where the questioned evidence was properly admitted.[3]

It was, of course, incumbent upon the State to prove the legality of appellant's arrest in view of his objection to the admissibility of the coins seized from him by the police at the time of his arrest. The facts relating to the Clarkson burglary were essential to the State's proof of probable cause, and although the testimony concerning the discovery of the coins near the fence was not so essential, we see no ultimate prejudice in admitting that evidence such as would constitute reversible error. A cautionary instruction to the jury not to consider the fact of the Clarkson burglary, or of appellant's connection with the coins found at the fence, in determining appellant's guilt of the Burgdorf burglary may have been proper, but no such request was made by appellant. See *Gamble v. State,* 2 Md. App. 271.

## IV

Appellant's final contention is that there was insufficient evidence for the jury to find that the breaking and entry of the Burgdorf residence took place in the nighttime, rather than in the daytime, *viz.,* before sundown. The evidence showed that the Burgdorfs left their home at 5 :45 p.m., in "broad daylight," and returned home at approximately 11 :00 p.m. From the testimony of Lehr, and from a map introduced in evidence, it was shown that the Burgdorf residence and the Clarkson residence were in close proximity to each other, although being on diffierent streets and separated by some railroad tracks. While there was no evidence of the exact time that the Burgdorf burglary occurred, we think from the evidence in the case, the jury could properly find that the Clarkson burglary was committed at night, sometime around 10 :00 p.m., that appellant was observed in the area at approximately that time, that he fled from the area when observed by a police officer and that, when captured shortly thereafter, he had in his possession fruits of the Burgdorf burglary—a burglary discovered at about the

---

3. Under Maryland Rule 729 d, in all jury trials conducted after September 1, 1967, such evidence must be received out of the presence of the jury. As appellant's trial was in May of 1967, the cited Rule is not here applicable.

same time as appellant's arrest was made. We believe the jury could draw a rational inference from these facts that the Burgdorf residence was entered in the nighttime, at approximately the same time as the Clarkson residence had been entered and that the same person or persons were involved in both burglaries.[4]

*Judgment affirmed; costs to be paid by appellant.*

4. There was also evidence showing that a fur coat stolen from the Burgdorf residence was found in the front yard of 4107 Edgevale Court. We think this fact tends to indicate that the Burgdorf and Clarkson homes were located near each other, and that the person or persons who stole the Burgdorf fur also entered the Clarkson residence on Edgevale Court, or were involved in that burglary.