488 A.2d 983

**Edward E. THOMAS**

v.

**STATE of Maryland, DEPARTMENT OF HEALTH AND MENTAL HYGIENE.**

**No. 711, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

March 8, 1985.

Robert H. Silberman, Temple Hills, for appellant.

James J. Lyko, Asst. Atty. Gen., Baltimore (Stephey H. Sachs, Atty. Gen., Baltimore, on the brief), for appellee.

Argued before BISHOP, ALPERT and KARWACKI, JJ.

KARWACKI, Judge.

On April 18, 1983, a Final Injunction was issued by the Circuit Court for Prince George's County requiring the appellant, Edward E. Thomas, to cease any refuse disposal on his property located at 11920 Old Fort Road, Fort Washington, Maryland. The appellant was also enjoined to undertake extensive remedial action to identify and remove hazardous wastes and hazardous substances that may exist on the property and to install specified monitoring procedures at the site.[1] It is from this injunction that the appellant has filed this appeal.

---

**1.** Under Md.Code (1982), § 7–201(k) of the Health-Environmental Article, "hazardous substance" is defined as follows:
　(k) *Hazardous substance.*—(1) "Hazardous substance" means any substance that:
　　　(i) Conveys toxic, lethal, or other injurious effects or which causes sublethal alterations to plant, animal, or aquatic life;
　　　(ii) May be injurious to human beings; or
　　　(iii) Persists in the environment.
　(2) "Hazardous substance" includes any matter identified as a "hazardous waste" by the Environmental Protection Agency.
On the other hand, "controlled hazardous substance" is defined in § 7–201(b) of the same Article as:
　(b) *Controlled hazardous substance.*—"Controlled hazardous substance" means:
　　　(1) Any hazardous substance that the Department identifies as a controlled hazardous substance under this subtitle; or
　　　(2) Low-level nuclear waste.
Under COMAR 10.51.01.03B(26) the term "controlled hazardous substance" is synonymous with the term "hazardous waste." The latter was the term used by the chancellor in his final injunction. The extensive regulatory scheme set forth in COMAR 10.51, including the requirements of laboratory analyses, applies only to "controlled hazardous substances," not to the broader category of hazardous substances.

For 27 years the appellant has been mining gravel from the Old Fort Road site, and then using the mined areas for commercial landfill purposes. The appellant concedes that he never acquired a refuse disposal permit for this purpose from the appellee, the State of Maryland Department of Health and Mental Hygiene (hereinafter "DHMH").

During 1982 and 1983, inspectors from DHMH observed a variety of refuse material being dumped upon the appellant's site. Evidence adduced at trial indicated that interspersed in this garbage were the following: dozens of electrical capacitors containing "extremely high" levels of polychlorinated biphenyls, (PCB's), (which are classified as acute hazardous waste under Maryland law, COMAR 10.51.-02.17E); 55-gallon drums of ignitable waste solvents and floor stripper (hazardous wastes under COMAR 10.51.02.-10); and large amounts of exposed rubble and refuse, consisting of demolition debris, domestic trash, and hospital wastes.

Many photographs were introduced into evidence depicting the massive quantities of household garbage. Evidence was presented to demonstrate that during the month of January, 1983, alone, thousands of tons of trash and debris were dumped upon the site. Numerous commercial refuse haulers were observed dumping trash at the property. Testimony was taken which indicated that a noxious odor emanated from at least a portion of the site. A stream lies beneath the landfill. The appellant's site slopes toward the rear of the property, at which point the stream emerges. Evidence showed that some of the refuse was dumped directly into the stream itself. While there is at this time no indication that the underground water is polluted, there was testimony at trial regarding the eventual occurrence of leachate, or seepage, which unchecked would ultimately pollute the ground water and, in turn, the stream.

DHMH inspectors issued a number of "Site Complaints" to the appellant. The first such complaint was issued on October 29, 1982, a second with a specific request for the

disposal of controlled hazardous substances, on May 6, 1983, and a third on May 12, 1983. Additionally, DHMH issued a formal Complaint and Order requiring the appellant to cease and desist operation of the facility. Despite these actions, the refuse dumping continued until an ex-parte injunction was granted by the lower court on May 24, 1983, mandating that the appellant cease any operation of refuse disposal on his property.

Following a May 27, 1983 hearing on the appellee's Bill of Complaint for Ex Parte, Interlocutory, and Permanent Injunctions and Civil Penalty, an interlocutory injunction was issued on June 3, 1983 reaffirming the ex parte injunction pending a final resolution of the matter. A second hearing was held on June 21, 1983. This hearing was concluded with the understanding that the interlocutory injunction would continue and the appellant would seek consultation from an expert with regard to remedial action to be taken on the property. The parties failed to reach an accord as to the nature and extent of remedial action to be employed to clean up the site. Therefore the trial court conducted another hearing in November of 1983. The trial court concluded that the appellant's property was in violation of the law and that the appellant bore the responsibility of its clean up. The trial court then allowed the parties thirty days to submit suggestions or recommendations for the abatement of the nuisance.

Again, a consensus could not be reached. The parties returned to court on March 14, 1984. Following a brief hearing, the trial judge issued the final injunction, in which he concluded:

> [The appellant] has operated a refuse disposal facility without a State-issued permit, in violation of *Md. Code Ann.*, Health-Environmental Article, § 9–210(a), has maintained and operated a facility for the storage and disposal of controlled hazardous substances without a State-issued permit, in violation of *Md. Code Ann.*, Health-Environmental Article, § 7–232(a), and has discharged pollutants into the waters of the State without a

State Discharge Permit and without any other legal authorization, in violation of *Md. Code Ann.*, Health-Environmental Article, § 9–322, all of said activities occurring on the property of the Defendant located in Prince George's County at 11920 Old Fort Road, Fort Washington, Maryland. . . .

By the terms of the injunction, the appellant was ordered to permanently cease and desist: the acceptance of any and all kinds of refuse; the placement of any pollutant and earthen or excavated fill in Maryland waters; and the placement, storage and disposal of all controlled hazardous substances on the property. The appellant was further ordered to remove "hazardous wastes" in accordance with Maryland statutes and regulations governing disposal of controlled hazardous substances. "Hazardous substances" and "all other materials that persist in the environment" were to be removed and disposed of at a sanitary landfill permitted for refuse disposal. Additionally, the appellant was ordered to obtain from the Prince George's County Soil Conservation Service an approved erosion and sediment control plan, and complete within six months the work specified by the plan. The appellant was ordered to notify DHMH before the excavation, drilling, digging, removal of refuse or earth moving, so that representatives from the appropriate agencies could be present when such actions were taken. The appellant was given six months to comply with the terms of the order. The order included a provision for extensions of this time period as deemed necessary by the trial court or if agreed to by the parties. Failure to adhere to the terms of the order would result in the imposition of a $500 per day penalty until all requirements of the injunction had been satisfied. The appellant was allowed to resume his mining operation on the property so long as he acted in compliance with the law.

On appeal the appellant raises three contentions:

I. The chancellor erred in his determination that items which persist in the environment qualify as con-

trolled hazardous substances without preliminary laboratory analysis;

II.   The chancellor erred in ordering the defendant to excavate the landfill to whatever depth necessary to determine whether hazardous substances exist on the property;  and

III.  The doctrine of comparative hardship requires a less drastic remedy than the complete excavation of the landfill.

## I.

█  The appellant challenges the trial court's classification of items which persist in the environment as "controlled hazardous substances" without a preliminary laboratory analysis to determine the chemical composition of the items.  Such an analysis would ascertain whether the items come within the provisions of Md.Code (1982), § 7–201(b) of the Health-Environmental Article and pertinent regulations dealing with controlled hazardous substances.  The appellant's objection does not arise from the terms of the Final Injunction but from language used by the court in its oral colloquy with the appellee's counsel at the conclusion of the chancellor's oral opinion.

The Court of Appeals has held on a number of occasions that an appeal will not lie from the trial court's opinion as opposed to its order.  In *McCann v. McGinnis*, 257 Md. 499, 263 A.2d 536 (1970), the Court quoted with approval the following language of Miller, *Equity Procedure* § 260 (1897) regarding the distinction between an opinion and a decree:

The decree of a court of equity, and not its opinion, is the instrument through which it acts in granting relief. The opinion of the court does not constitute a part of the decree. . . .   It is the expression of the reasons by which the judge reaches his conclusion.  The decree on the other hand, is the fiat or sentence of the law, determining the matter of the controversy.  *An opinion, however posi-*

*tive, is not in any sense a final act; it is not the subject of appeal, and may always be changed before final decree.* The reasons assigned for a decree are no part of the decree itself. (emphasis added)

*Id.* at 505, 263 A.2d 536. *See also Suitland Dev. v. Merchants Mort.,* 254 Md. 43, 53–56, 254 A.2d 359 (1969); *Mattingly v. Houston,* 252 Md. 590, 593, 250 A.2d 633 (1969); *Hayman, Adm'r v. Messick,* 252 Md. 384, 388, 249 A.2d 695 (1969); *Ballan v. Ballan,* 251 Md. 737, 743, 248 A.2d 871 (1969); *Bell v. Shifflett,* 249 Md. 104, 105–106, 238 A.2d 533 (1968); *Kennedy v. Foley, Receiver,* 240 Md. 615, 214 A.2d 815 (1965).

The appellant is correct in his assertion that the trial court in its oral opinion mistakenly classified items which persist in the environment as "controlled hazardous substances" as defined in Md.Code (1982), § 7–201(b) of the Health-Environmental Article, rather than properly labeling those items as "hazardous substances," which are governed by § 7–201(k) of the same Article. This argument, however, avails him naught, as it is to the *final order,* not the *opinion,* which we look. Because the chancellor in his Final Injunction correctly stated and applied the pertinent law, we will not disturb that order.

## II.

The appellant next contends that the trial court erred in requiring him to excavate twenty seven years of landfill to whatever depth necessary to determine whether hazardous substances exist on his property. We disagree.

As noted in our recitation of the evidence adduced at trial, among the items found discarded in the appellant's dump were hazardous wastes (controlled hazardous substances), including acutely hazardous PCB's and 55-gallon drums of waste solvents, as well as various industrial wastes, household garbage, medical/hospital wastes, discarded appliances and other types of debris and refuse. The evidence showed trash and garbage were found to be in direct contact with

ground water emanating from the dump and that refuse had been dumped into the surface stream flowing adjacent to the rear of the property.

The chancellor specifically found that the appellant was in "violation of the laws alleged." The evidence supports this determination.

The chancellor then concluded that, "[a]ll of the waste which is considered or included within the definition in the Code of 'hazardous waste' and 'hazardous substance' shall be removed." It is evident that the chancellor had determined that the "removal option" was preferable to the "close out option," (governed by COMAR 10.71.11) which would have allowed the wastes to remain at the site subject to an extensive system of closure and long-term monitoring. It is within the province of the trial court to make such a determination, and its judgment which is not clearly erroneous will not be set aside by this Court.[2] *Kline v. The Chase Manhattan Bank, N.A.,* 43 Md.App. 133, 141–42, 403 A.2d 395, *cert. denied,* 286 Md. 749 (1979); *Carling Brewing Company v. Belzner,* 15 Md.App. 406, 412, 291 A.2d 175 (1972).

### III.

Lastly, the appellant argues that application of the doctrine of comparative hardship requires a less drastic remedy than the complete excavation of 27 years of landfill. Under the circumstances here, we find this contention completely meritless.

---

**2.** We are not persuaded by the appellant's argument that in selecting the "removal option," the chancellor ignored the resulting expense to the appellant. We note that for 27 years the appellant has reaped a profit from the unpermitted use of his property as a landfill. The appellant cannot now cry that the cost of repairing the harm is too expensive. Furthermore, we are in accord with the chancellor that cost considerations are rightly secondary to concern for environmental safety. As the trial judge stated, "when it gets to the point where it affects the health and welfare of the people of the community, some action has to be taken, even though it presents problems and hardships.... We know it's there, and its got to be abated."

While the equitable doctrine of comparative hardship is recognized in Maryland (*see Grant v. Katson*, 261 Md. 112, 274 A.2d 88 (1971); and *Chevy Chase Village v. Jaggers*, 261 Md. 309, 275 A.2d 167 (1971)), it is wholly inapplicable in this case. The doctrine provides a chancellor with the opportunity to avoid the harsh results of the imposition of an injunction in a situation where "the mistake is innocent and the damages to the offender tip the equitable scales unduly against him because the invasion and the benefit to the injured owner are slight." *Dundalk Holding Co. v. Easter*, 215 Md. 549, 556, 137 A.2d 667, *cert. denied* 358 U.S. 821, 79 S.Ct. 34, 3 L.Ed.2d 62, *rehearing denied* 358 U.S. 901, 79 S.Ct. 219, 3 L.Ed.2d 151 (1958). The Court of Appeals has held, however, that, "[i]n litigation between the government and a private party, the court is not bound by the strict requirements of traditional equity as developed in private litigation." *State Department of Health and Mental Hygiene v. Baltimore County*, 281 Md. 548, 555, 383 A.2d 51 (1977), *quoted in Joy v. Anne Arundel County*, 52 Md.App. 653, 660, 451 A.2d 1237 (1982), *cert. denied*, 295 Md. 440 (1983).

In *Joy*, this Court upheld the imposition of an injunction which enjoined the owner of a dump/junkyard from continued refuse dumping on his property, and required him to remove refuse materials, including hazardous wastes, which had been deposited there without the requisite permits. We held that failure to obtain necessary governmental permits itself forms a sufficient basis for the granting of injunctive relief, since the government is considered to be acting on behalf of all citizens to enforce their right to require conformity with the law as the *quid pro quo* for their own submission to the restrictions imposed by the law. *Id.* at 659–60, 451 A.2d 1237.

Even if the comparative hardship doctrine were applicable in a case of this kind, viewing the facts *sub judice* in the light of the criteria set forth in *Dundalk Holding Co., supra*, for the imposition of the comparative hardship doctrine, we find it inconceivable that the appellant believes his

case comes within the ambit of that doctrine. The appellant persisted for 27 years in dumping, without the requisite permit, any and all forms of refuse, waste and debris. This impermissible dumping continued in contravention of repeated site complaints and a formal cease and desist order issued by DHMH. Such behavior is not that of an innocent offender. Furthermore, the harm to the environment caused by the dumping of "hazardous substances" and "hazardous wastes" can under no circumstances be perceived as slight. *Dundalk Holding Co., supra.* Consequently, we will not disturb the terms of the trial court's final injunction.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY THE APPELLANT.