616 A.2d 441

**SOUTHCOAST BUILDERS OF MARYLAND, INC., et al.**

v.

**POTTER HEATING & ELECTRIC, INC.**

**No. 400, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Dec. 1, 1992.

Benjamin J. Woolery (Richard M. McGill, on the brief), Upper Marlboro, for appellants.

Stephen P. Fitzgerald (Mudd, Mudd & Fitzgerald, P.A., on the brief), La Plata, for appellee.

Argued before WILNER, C.J., and MOYLAN and MOTZ, JJ.

MOTZ, Judge.

In this action a custom home construction company and the two individuals who were its sole officers and stockholders were sued by one of its contractors. It was asserted *inter alia* that, in failing to pay the contractor for services rendered, the officers of the construction company committed common law fraud and violated Real Property Art. § 9–201 et seq. Because the judgment of the Circuit Court for Charles County was based on irreconcilably inconsistent findings, we must vacate it and remand the case for a new trial.

(i)

From at least 1984, appellant, Southcoast Builders of Maryland, Inc. ("Southcoast"), was in the business of con-

structing custom built and "spec" homes. Its sole stockholders and officers were appellants, Michael T. Wyvill[1] and Marvin F. Lewis. Over the years, Southcoast has frequently employed appellee, Potter Heating & Electric, Inc. ("Potter"), as one of its heating, electrical, air conditioning contractors. The usual practice had been that if Southcoast "got behind" on payment to Potter, in order to ensure that Potter would continue to work on Southcoast's houses, Wyvill and Lewis and their wives would sign promissory notes to Potter and pay off the notes. In recent years, Southcoast was "in trouble" and Mrs. Wyvill and Mrs. Lewis refused to sign promissory notes.

In April, 1988, Southcoast entered into a contract with Paul and Susan Resnick to build a custom house for $209,-000. At Southcoast's request, Potter provided and installed all heating, air conditioning and wiring for the Resnick house. Potter satisfactorily completed[2] its work by April 26, 1989, but Southcoast failed to pay Potter the balance due it. Southcoast's records showed that it received a total of $216,050 from the Resnicks and applied those proceeds as follows:

| | |
|---|---|
| $ 9,664.00 | To Southcoast's employees for labor on the Resnick home. |
| 76,721.00 | For materials delivered to the Resnick home. |
| 38,315.97 | For subcontractors performing labor on the Resnick home. |
| 2,919.65 | For settlement and permit expenses. |
| 1,313.83 | For miscellaneous expenses. |
| $128,934.45 | Total |

1. We were informed at oral argument that while this case was pending on appeal, Mr. Lewis and his wife filed for protection under the federal bankruptcy laws. The automatic stay of the Bankruptcy Court has yet to be lifted. Accordingly, this action is, as Potter conceded, stayed as to Lewis.

2. As the trial court specifically noted, there was "no allegation in this case" that any of Potter's work "was poorly done."

The approximately $87,000 in unaccounted for Resnick proceeds were used to pay "expenses for previous jobs that had been completed," administrative and overhead expenses, repayment of a loan to Mrs. Wyvill and salaries to Lewis of $50,585 and to Wyvill of $16,000. Weekly salaries were paid to Wyvill and Lewis, regardless of the financial status of the corporation.

On February 2, 1990, Wyvill and Lewis met with Potter's president, Lawrence Potter. They wanted Potter to complete the work on still another of their houses (the Quailwood house) on which they owed him $10,855 for work previously done. Mr. Potter told them that since they would no longer give him promissory notes, he would do no more work for them until he was paid some of the balance owing. Mr. Potter testified that Wyvill and Lewis then each personally guaranteed that Potter would get $10,000 from the proceeds of the Quailwood house at settlement and $5,000 when another house was settled. Relying on those representations, Potter completed the work on the Quailwood house. The Quailwood house went to settlement and Southcoast received $30,000 net proceeds at settlement; Potter, however, never received any payment from these proceeds.[3]

(ii)

Potter filed a four count complaint against Southcoast, Wyvill and Lewis. In Count I, Potter sued Southcoast for services performed on the Quailwood house in the amount of $28,537.28 and interest and costs. The circuit court granted summary judgment to Potter on this count and no party appeals from that portion of the lower court's order. Count III was dismissed by Potter prior to trial. The case proceeded to trial on the second and fourth counts.

On Count IV, Potter sued Wyvill and Lewis, personally, for services performed on the Quailwood house, in the

---

**3.** The other house has not yet been sold.

amount of $28,537.28, plus attorneys' fees and punitive damages of $25,000. The basis for this claim was "Wyvill and Lewis personally guaranteed" that Potter would be paid upon settlement of the Quailwood house, and that these representations were false, were made with intent to defraud, were justifiably relied upon by Potter to its detriment, and Potter was damaged thereby. The circuit court awarded judgment for $10,000, plus interest and court costs for Potter against Wyvill and Lewis on this count. This judgment is the subject of the appeal of Wyvill (and originally Lewis, see n. 1).

On Count II, Potter sued Wyvill and Lewis personally for services performed on the Resnick home in the amount of $17,679.01, plus attorneys fees and punitive damages of $15,000. The theory of recovery on this count was Real Prop. Art. § 9–201 *et seq.* The circuit court granted judgment for Wyvill and Resnick on this count; this judgment is the subject of Potter's cross appeal.

Thus, two issues are before us. Wyvill appeals, asserting:

1. The trial court erred in awarding punitive damages under Count IV of the complaint because that was a fraud claim and the trial court specifically found that there was no fraud committed?

Potter, on cross appeal, asserts:

2. The *prima facie* evidence of intent to defraud created by the two officers' misuse of funds held in trust, as mandated by Section 9–203 of the Real Property Article, was not rebutted by evidence that the two officers used the money to pay their own salaries, to repay a loan to one of their spouses, and to pay other corporate debts not related to the subject project?

We cannot reach either claim but, instead, must vacate the judgment and remand for a new trial because the judgment of the trial court was based on inconsistent findings.

(iii)

 The circuit court granted judgment for the plaintiff, Potter, on Count IV, which was based on common law fraud. In order to prevail on a common law fraud count, a plaintiff must demonstrate:

(1) that the defendant made a false representation; (2) that its falsity was either known to defendant or that the misrepresentation was made with such reckless indifference to the truth as to be equivalent to actual knowledge; (3) *that it was made for the purpose of defrauding the person claiming to be injured thereby;* (4) that such person not only relied upon the misrepresentation, but had a right to rely upon it ...; and, (5) that such person actually suffered damage directly resulting from such fraudulent misrepresentation.

*Parker v. Columbia Bank,* 91 Md.App. 346, 359, 604 A.2d 521, *cert. denied,* 327 Md. 524, 610 A.2d 796 (1992) (emphasis added).

On the other hand, the circuit court granted judgment for the defendants, Wyvill and Lewis, on Count II, which was based on § 9–201 *et seq.* of the Real Property Article. Section 9–202 provides *inter alia* that "any officer" or "employee" of a contractor who "with intent to defraud" retains moneys paid under a owner's contract "for any purpose other than to pay those subcontractors for whom the moneys are held in trust shall be personally liable to them." Moreover, the circuit court expressly stated that although Potter made out a prima facie case of intent to defraud under § 9–203,[4] the court thought that the prima facie case "was rebutted" and so it was *for this reason* that it was granting judgment for Wyvill and Lewis on Count II.

Thus, a necessary element for recovery under both Count II and Count IV was intent to defraud. In finding for

---

**4.** Section 9–203 provides that the use by a contractor or officer of a contractor of any moneys held in trust for any "other purpose than to pay those subcontractors who did work or furnished materials, or both, ... shall be prima facie evidence of intent to defraud in a civil action."

Potter on Count IV, the trial court necessarily had to find that Potter had proved Wyvill and Lewis intended to defraud him.[5] Although, it is possible that the circuit court could have found against Potter on Count II because of failure to prove other elements of the statutory offense (*e.g.,* the money was not held "for any purpose other than to pay" contractors). In fact, however, the circuit court here explained it was because of a failure of proof on the intent to defraud element of the statute that it found against Potter. Accordingly, the findings under the two counts are clearly inconsistent.

■ Moreover, because these inconsistencies were contained in a judge's findings and not in a jury's verdict, reversal is required. Inconsistent verdicts by a jury "are normally tolerated." *Wright v. State,* 307 Md. 552, 576, 515 A.2d 1157 (1986). " 'This is so because of the unique role of

---

5. Wyvill's claim that because the circuit judge in his oral opinion commented *inter alia* that he saw no "thievery" or "fraudulent activity" or "overt intent to defraud" by Lewis or Wyvill, necessarily means that his findings of fact were contrary to the relief granted, is meritless. The comments in the oral opinion were not formal findings of fact. Moreover, in context, what the circuit court appeared to conclude is that the defendants did not exhibit any of the thievery for personal pleasure—"buy expensive cars," "gambling," "girlfriends to the Bahamas"—often connected with allegations of fraud. In any event, an appeal is from the *judgment* of the circuit court, not its opinion which is no part of that judgment. *Fast Bearing Co. v. Precision Dev. Co.,* 185 Md. 288, 293, 44 A.2d 735 (1945). *See also, McCann v. McGinnis,* 257 Md. 499, 505, 263 A.2d 536 (1970); *Scherr v. Braun,* 211 Md. 553, 128 A.2d 388 (1957); *Thomas v. State, Dept. of Health & Mental Hygiene,* 62 Md.App. 166, 172–173, 488 A.2d 983 (1985) (and numerous cases cited therein.) *Merriken v. Merriken,* 87 Md.App. 522, 546, 590 A.2d 566 (1991), relied upon by Wyvill, is not to the contrary. In *Merriken,* we simply held that a court cannot impose sanctions under Rule 1–341 without specifically finding a party acted in bad faith or without substantial justification. That holding is mandated by the language of Rule 1–341 and the nature of sanctions imposed pursuant to that rule. *See Inlet Associates v. Harrison Inn,* 324 Md. 254, 264–266, 596 A.2d 1049 (1991). It is not a holding that a trial court cannot make oral (or even written) comments not entirely consistent with its order; as the cases cited above indicate, this is not Maryland law.

the jury, [and has] no impact whatsoever upon the substantive law explicated by the Court.'" *Hoffert v. State,* 319 Md. 377, 384, 572 A.2d 536 (1990) *quoting Mack v. State,* 300 Md. 583, 594–595, 479 A.2d 1344 (1984).

> The general view is that inconsistencies may be the product of lenity, mistake or compromise to reach unanimity, and that continual correction of such matters would undermine the historic vote of the jury as the arbiter of questions put to it.

*Shell v. State,* 307 Md. 46, 54, 512 A.2d 358 (1986). *See also Eagle–Picher v. Balbos,* 84 Md.App. 10, 35–36, 578 A.2d 228 (1990), *rev'd on other grounds,* 326 Md. 179, 604 A.2d 445 (1992); *Travel Committee, Inc. v. Pan Am,* 91 Md.App. 123, 149, 603 A.2d 1301 (1992) (same); *S & R v. Nails,* 85 Md.App. 570, n. 11, 584 A.2d 722 *cert. granted,* 323 Md. 115, 591 A.2d 506 (1991) (same). The Court of Appeals, however, has clearly mandated different treatment when reviewing judgments in nonjury trials.

In *Johnson v. State,* 238 Md. 528, 543, 209 A.2d 765 (1965), the court discussed with approval the opinion of the Second Circuit in *United States v. Maybury,* 274 F.2d 899 (2d Cir.1960) and quoted from that opinion as follows:

> None of these considerations [justifying inconsistent jury verdicts] is fairly applicable to the trial of a ... case before a judge. There is no "arbitral" element in such a trial. While the historic position of the jury affords ample ground for tolerating the jury's assumption of the power to insure lenity, the judge is hardly the "voice of the country," even when he sits in the jury's place. \* \* \* There is no need to permit inconsistency in the disposition of various counts so that the judge may reach unanimity with himself; on the contrary, he would be forbidden this easy method for resolving doubts. \* \* \* We do not believe we would enhance respect for law or for the courts by recognizing for a judge the same right to indulge in "vagaries" in the disposition of criminal charges that, for historic reasons, has been granted the jury.

274 F.2d at 903. Where, however, a "trial judge on the record explains an apparent inconsistency in the verdicts, and where the explanation shows that the trial court's action was 'proper' and there is no 'unfairness,' the verdicts" will be sustained. *Shell v. State, supra,* 307 Md. at 56, 512 A.2d 358 *quoting Johnson v. State, supra,* 238 Md. at 545, 209 A.2d 765.

Although *Johnson* was a criminal case, we see no reason to apply a different rule in civil cases. We have, in the past, applied related principles regarding inconsistent verdicts in civil cases. *See, Eagle–Picher, supra,* 84 Md.App. at 35–36, 578 A.2d 228 ("the rationale for this principle [regarding inconsistent jury verdicts] is equally valid when applied in civil actions"); *S & R, supra; Travel Committee, supra.* Moreover, in other jurisdictions, civil nonjury judgments based on inconsistent findings of fact and conclusions of law have consistently been reversed. *See, e.g., Johnson Electrical Company v. State,* 164 Conn. 346, 321 A.2d 461, 461 (1973) (it is the duty of the judge who has tried a case to prepare a proper finding, that is, one that is consistent and logical); *Lackey v. Hamlet City Board of Education,* 257 N.C. 78, 125 S.E.2d 343, 347–48 (1962) ("courts endeavor to reconcile findings of fact . . . as to material matters which appear to be contradictory, so as to uphold the judgment if possible, but this rule cannot be used to uphold findings of fact . . . as to material matters that are really inconsistent with each other"); *Wickham v. Famco Services, Inc.,* 350 So.2d 1159, 1161 (Fla.Dist.Ct.App.1977) (trial court's judgment containing inconsistent conclusions of law should be invalidated unless it is possible to resolve the inconsistencies).

As in *Shell,* this is not a case "in which there is only an apparent inconsistency which, in substance, disappears upon review of the trial court's explanation." *Shell v. State, supra,* 307 Md. at 57, 512 A.2d 358. The trial court's oral opinion here, rather than clarifying an apparent inconsistency, made it clear that an apparent inconsistency was real. If a jury had delivered a verdict for Potter on Count IV and

against Potter on Count II, we would probably have concluded that the verdicts were not fatally inconsistent. In addition to the sanctity of the jury process and other reasons outlined in *Johnson* and *Maybury*, we could have concluded that the jury could have found against Potter on Count II for reasons not inconsistent with its findings for Potter on Count IV. The trial court's oral comments, however, make that conclusion impossible on this record. The circuit court expressly explained that it was finding against Potter and for the defendants on Count II was because it found that the necessary evidence of intent to defraud had been "rebutted." Thus, on one hand, the circuit court found there was intent to defraud, *i.e.*, a necessity for the plaintiff's verdict in Count IV, and on the other, specifically found no intent to defraud and so granted a verdict for the defendants on Count II. Because of these irreconcilable inconsistencies, we vacate the judgment of the circuit court and remand for a new trial.

JUDGMENT VACATED AND CASE REMANDED TO THE CIRCUIT COURT FOR CHARLES COUNTY FOR A NEW TRIAL.

COSTS TO BE PAID ONE HALF BY APPELLANT WYVILL AND ONE HALF BY APPELLEE.