In re UNITED STATES

v.

**Fred William FANCHER.**

**No. CR70–97W.**

United States District Court,
D. South Dakota, W. D.

Dec. 1, 1970.

As Amended Jan. 19, 1971.

Wm. F. Clayton, U. S. Atty., Sioux Falls, S. D., Thomas P. Ranney, Asst. U. S. Atty., Rapid City, S. D., for plaintiff.

Donald R. Shultz, Rapid City, S. D., for defendant.

### MEMORANDUM OPINION

BOGUE, District Judge.

On or about the 28th day of May, 1969, the defendant in this action was charged in an indictment on two counts as follows:

### COUNT I

"On or about the 24th day of March, 1969, in the District of South Dakota, Fred William Fancher, an unlicensed dealer in firearms, who was engaged in the business of pawnbroking, received by way of pledge or pawn, one 30.06

bolt-action rifle, Serial number 75522, in violation of 18 U.S.C. § 922(a).

## COUNT II

On or about the 25th day of March, 1969, in the District of South Dakota, Fred William Fancher, an unlicensed dealer in firearms, who was engaged in the business of pawnbroking, received by way of pledge or pawn, one .22 caliber Ithaca semi-automatic rifle, Serial number 17099–AT, in violation of 18 U.S.C. § 922(a)."

On the 3rd day of September, 1969, the United States District Court dismissed the indictment on the basis that it failed to state a criminal offense. Notice of appeal to the United States Supreme Court was given by William F. Clayton, United States District Attorney for the District of South Dakota. The Supreme Court did note probable jurisdiction on the appeal involving the parties on March 23, 1970, but subsequently the Solicitor General on behalf of the United States, moved to dismiss its appeal in this case and the appeal was then dismissed on June 10, 1970.

On the 16th day of July, 1970, a second indictment was filed against the defendant charging him as follows:

"From on or before the 24th day of March, 1969, to on or about the 26th day of March, 1969, in the District of South Dakota, Fred William Fancher willfully and knowingly engaged in the business of dealing in firearms at the Long Horn Bar and Variety Store in the Town of Interior, South Dakota, without having been licensed to do so under the provisions of Chapter 44, Title 18, United States Code, to-wit: by receiving by way of pledge or pawn one (1) 30.06 bolt-action rifle, Serial No. 75522, and one (1) .22 caliber Ithaca semi-automatic rifle, Serial No. 17099–AT, in violation of Sections 922(a) (1) and 924(a), Title 18, United States Code."

The defendant in this action has moved this court as follows:

1. To dismiss the indictment for the reason that same is res judicata.
2. To dismiss the indictment for the reason the same fails to state a crime.

Statutes involved are as follows:

18 U.S.C. (Supp. IV) § 922(a) (1), part of the Gun Control Act of 1968, provides:

(a) It shall be unlawful—

(1) for any person except a licensed importer, manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms or ammunition, or in the course of such business to ship, transport, or receive any firearm or ammunition in interstate or foreign commerce.

18 U.S.C. § 921(a) (11)

(11) The term "dealer" means (A) any person engaged in the business of selling firearms or ammunition at wholesale or retail, (B) any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms, or (C) any person who is a pawnbroker. The term "licensed dealer" means any dealer who is licensed under the provisions of this chapter.

18 U.S.C. § 924(a)

(a) Whoever violates any provision of this chapter or knowingly makes any false statement or representation with respect to the information required by the provisions of this chapter to be kept in the records of a person licensed under this chapter, or in applying for any license or exemption or relief from disability under the provisions of this chapter, shall be fined not more than $5,000, or imprisoned not more than five years, or both, and shall become eligible for parole as the Board of Parole shall determine."

It is abundantly clear that there is no valid issue of res judicata or

double jeopardy here. The mere returning of an indictment and its dismissal and substitution of another does not place a person in legal jeopardy. Jeopardy occurs only after a jury has been empaneled and sworn, or after a judge, sitting as a trier of facts, begins to hear the evidence, United States v. Kimbrew, 6 Cir., 380 F.2d 538, 541 (1967). The main requirement in a finding of res judicata is that it must be shown that the issues in question were determined in a former prosecution. This most certainly was not done in this case due to the fact that the charge in the initial indictment was improper and did not charge an offense and was therefore properly dismissed. Haugen v. United States, 9 Cir., 153 F.2d 850; also Robinson v. United States, 5 Cir., 284 F.2d 775.

■ The defendant has urged that the indictment should be dismissed for the reason that the same fails to state a crime. The thrust of the Gun Control Act of 1968 is that all dealers in firearms obtain a federal license, irrespective of whether their particular dealings in firearms, in fact, are shown to affect commerce. The relevant language contained in § 922(a) (1), as set out above, viewed together with the legislative history of such section, indicates beyond logical dispute that the intention of Congress was that all dealers in firearms must comply with the federal licensing requirements. The word "dealers" stands alone, and nowhere in the said gun law is there any specific suggestion that only interstate dealers, or those dealers whose businesses are shown in each individual case to have an effect on commerce, shall be required to register. As regards dealers in firearms, it appears clear that the chapter is primarily directed at controlling intrastate sales, in the hope that the over-all effect of such control will drastically curtail the indiscriminate movement of firearms in interstate commerce, and thus lend aid to state and local agencies in the enforcement of their gun laws and in the prevention of crimes committed with firearms.

As Mr. Justice Jackson stated in United States ex rel. Marcus v. Hess, (1943) 317 U.S. 537, 557, 63 S.Ct. 379, 391, 87 L.Ed. 443, 456, "If ever we are justified in reading a statute, not narrowly as through a keyhole, but in the broad light of the evils it aimed at and the good it hoped for, it is here." Additionally, one must read the legislative history of § 922(a) (1) to obtain the meaning and the feeling of the act. In the House and Senate Reports (H.R. 1577), 90th Congress, 2nd Session, Page 12; U.S.Code Cong. & Admin.News, p. 4418, Senate Report 1501, 90th Congress, 2nd Session, Page 32, which contain the following statements: "This paragraph proscribes any person from the business of importing, manufacturing, or dealing in firearms * * * without a license. The prohibition goes to both an unlicensed person engaging in a firearms business *and* such a person who, in the course of that business, ships, transports, or receives, a firearm or ammunition in interstate or foreign commerce. *Thus, the paragraph makes it clear that a license is required for an intrastate business as well as an interstate business.*" (Emphasis added.)

A cogent statement was made by Mr. Justice Holmes many years ago in the case of Johnson v. United States, 1 Cir., 163 F. 30, 32 (1908): "The legislature has the power to decide what the policy of the law shall be and if it has intimated its will, however indirectly, that will should be recognized and obeyed. The major premise of the conclusion expresses the statute. The change of policy that induces the enactment, may not be set out in terms, but it is not an adequate discharge of duty for the courts to say, "We see what you are driving at, but you have not said it, therefore we shall go on as before." It is not felt by this court that the attitude and thinking of the Congress was obtuse or confusing. It is clear what their intent was, and the reason for it was the crying demand and need for effective nation-wide law enforcement. The needs of such effective nation-wide law enforcement are

best served, obviously, by requiring *all* dealers in firearms to register, regardless of the scope and nature of their business.

■ While it is not necessary to follow all of the reasoning set out by Congress in the passage of the Gun Control Law, suffice it to say that the need was great for the enactment of a law of such magnitude, and the enactment was born of necessity by reason of the inability of the various states to limit the indiscriminate sale of firearms, it being obvious that such state provisions could easily be subverted by the simple expedient of purchasing a weapon in another state (with less restrictive controls than in the purchaser's state), either directly or by mail and use it in the state where the prohibition existed. The end result is that the various states' efforts to control such indiscriminate sale of firearms resulted in utter chaos and were totally ineffective so far as the individuals who were bent on the commission of crime. Nowhere in the statute is it indicated that Congress had any wish to interfere with the flow of firearms to legitimate unlicensed users for legitimate intrastate purposes.

■ The only remaining issue concerns itself with power of Congress to provide for a licensing requirement over interstate commerce. One must look to the landmark case of United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L. Ed. 609, which concerns itself with the Fair Labor Standards Act of 1938, regulating the wages and hours of employees in production of goods involved in interstate commerce, and the court declared therein that Congress' power "extends to those activities intrastate which so affect interstate commerce or the exercise of the power of Congress over it as to make regulation of them appropriate means to the attainment of a legitimate end, the exercise of the granted power of Congress to regulate interstate commerce." Further, the court said in United States v. Darby, "It is a legitimate exercise of Congressional power to regu-

late 'intrastate transactions which are so co-mingled with or related to interstate commerce that all must be regulated if the interstate commerce is to be effectively controlled.' "

The defendant's motions will be denied. Government counsel will prepare the necessary order to effect the foregoing opinion.