# BLONDES *v.* STATE OF MARYLAND

[No. 43, September Term, 1974.]

*Decided January 9, 1975.*

436

The cause was argued before SINGLEY, SMITH, DIGGES, ELDRIDGE and O'DONNELL, JJ., and EUGENE MACKALL CHILDS, Associate Judge of the Fifth Judicial Circuit and ROBERT F. SWEENEY, Chief Judge of the District Court of Maryland, specially assigned.

*Joseph B. Simpson, Jr.,* with whom were *Vivian V. Simpson, Joseph J. D'Erasmo* and *Simpson & Simpson* on the brief, for appellant.

*James G. Klair, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

The issue presented here is whether, under the peculiar facts of the case, the petitioner's conviction on bribery charges, at the conclusion of his second trial, was in violation of the prohibition against double jeopardy.

The petitioner, Leonard Saul Blondes, was a member of the General Assembly of Maryland from 1962 through 1970. In May 1971, Blondes was indicted by the Grand Jury of

Montgomery County in a five count indictment. The first two counts of the indictment charged Blondes with demanding and receiving a fee for the purpose of influencing him in the performance of his official duties as a member of the Legislature in violation of the bribery statute, Maryland Code (1957, 1971 Repl. Vol.), Art. 27, § 23.[1] The third, fourth and fifth counts of the indictment charged him with conspiracy and malfeasance in office. Blondes elected to waive a jury trial, and the case was tried before the Circuit Court for Montgomery County (Clapp, J.) on December 7, 8 and 9, 1971. The trial judge, at the outset, dismissed the third, fourth and fifth counts of the indictment on the ground that they were barred by limitations. At the conclusion of the trial, the court found Blondes guilty on the first two counts, the bribery charges, and sentenced him to pay a fine of $2,500 and costs.

On October 12, 1972, petitioner's bribery conviction was reversed and the case was remanded for a new trial by the Court of Special Appeals. *Blondes v. State,* 16 Md. App. 165, 294 A. 2d 661 (1972). The Court of Special Appeals, in an opinion by Chief Judge Murphy, held that the trial judge had improperly admitted and relied on evidence of Blondes's legislative acts, and motivation for his legislative acts, in violation of the Speech and Debate clauses of the Declaration of Rights and the Constitution of Maryland.[2]

---

1. Art. 27, § 23, provides:

" [I]f ... any member of the General Assembly of Maryland ... shall demand or receive any bribe, fee, reward or testimonial for the purpose of influencing him in the performance of his official duties, or for neglecting or failing to perform the same, ... every such person so demanding or receiving any bribe, fee, reward, or testimonial shall be deemed guilty of bribery, and on being convicted thereof shall be fined not less than one hundred dollars nor more than five thousand dollars ... and shall also be forever disfranchised and disqualified from holding any office of trust or profit in this State ...."

2. Article 10 of the Maryland Declaration of Rights provides:

"That freedom of speech, and debate, or proceedings in the Legislature, ought not to be impeached by any Court of Judicature."

Article 3, § 18, of the Maryland Constitution provides:

"No Senator or Delegate shall be liable in any civil action, or criminal prosecution, whatever, for words spoken in debate."

The opinion of the Court of Special Appeals made it clear that it was the admission of evidence during the trial, and not the charges in the indictment, which required a reversal of the conviction. Thus, the court held (165 Md. App. at 179):

" . . . we think it plain that substantive evidence of legislative acts performed by Blondes, introduced in evidence against him, over his objection, was inadmissible and, because not harmless, requires a retrial . . . ."

And again (*id.* at 184):

"Since the trial judge erred in relying upon substantive evidence of Blondes's legislative acts, we shall order a new trial purged of references to legislative acts prohibited by the legislative privilege."

With regard to the indictment, the court held that, as it was drawn in the words of the statute, it was sufficient, and "we find no constitutional or other deficiency in the indictment." (*Id.* at 186.)

After return of the mandate from the Court of Special Appeals, Blondes on April 2, 1973, filed a motion to dismiss the indictment and a motion to inspect the Grand Jury minutes. Petitioner alleged that the indictment was invalid because the Grand Jury indicted him "solely as a result of its inquiry into" his legislative motives and acts. The State opposed these motions, arguing that the Grand Jury did not indict Blondes solely as a result of its inquiry into his legislative acts and motives. However, the prosecuting attorney apparently was uncertain about the continuing validity of the indictment because on April 4, 1973, the State filed an information which was identical in wording to the first two counts of the indictment.

The motions to dismiss the indictment and to inspect the Grand Jury minutes were heard by the Circuit Court for Montgomery County (Prendergast, J.), on April 4, 1973. At that hearing, the prosecuting attorney at one point suggested that the trial proceed on the information, that this

would render the motion to dismiss the indictment moot, and that, after a verdict, the indictment could be disposed of. The petitioner, on the other hand, maintained that the indictment should be "nol-prossed or withdrawn or dismissed or some definitive kind of action taken in reference to the indictment." At the conclusion of the hearing, the trial court reserved ruling on petitioner's motions, and they have never been ruled upon. The following day, April 5, 1973, the court assigned the case for trial to be held on May 7, 1973.

On April 18, 1973, Blondes filed a motion to dismiss the information. He asserted that the State had no jurisdiction to proceed by information, that the State had abandoned the prosecution under the indictment, that such an abandonment was the equivalent of the State's entry of a *nolle prosequi* on the charges so abandoned, and that the double jeopardy provision of the Fifth Amendment prohibited his further prosecution.

On April 30, 1973, the State sought an order for the taking of the testimony of one of its witnesses, Revelle Stuart Armiger, by deposition. The State alleged that the witness's testimony was material to the State's case, and that the witness might be prevented from attending the trial because of his absence from Maryland. The petitioner objected to the State's taking this deposition, urging that it was a step in the prosecution and placed him in jeopardy. The circuit court (Mathias, J.), on April 30, 1973, ordered that the deposition be taken and that Blondes be present with his attorney at the taking of the deposition.

As ordered by the court, Blondes and his attorney appeared on May 1, 1973, for the taking of Armiger's deposition. Before Armiger began to testify, Blondes's attorney requested that the State advise him as to "which of the charging documents we are taking this deposition pursuant to, namely, the indictment, returned on May 24, 1971, or the information filed on April 4, 1973 . . . ." The prosecuting attorney replied "that the State is not answering" the question. Blondes's attorney objected "because I don't know whether you are proceeding under the

indictment or under the information." The defense attorney went on: "Let the record show on the question of double jeopardy, I raise that again and state that this is a step in the prosecution of the Defendant . . . and we object to the proceedings. . . . Also, we demand that the State elect under which charging document the State is proceeding." The State declined to answer, the witness Armiger was sworn, and he gave his testimony.

On May 7, 1973, the scheduled trial date, the proceedings opened before Judge Prendergast with the prosecuting attorney informing the court that the witness Armiger was out of the State, that Mr. James Robert Miller, attorney for Armiger, was present in the courtroom to testify concerning the whereabouts of Mr. Armiger, and that the State would like a ruling concerning the admissibility in evidence of Armiger's deposition. Blondes's attorney objected to admitting the deposition. The trial judge then decided that Mr. Miller, attorney for Mr. Armiger, would be heard concerning the whereabouts of Mr. Armiger. Mr. Miller was sworn, examined and cross-examined concerning Armiger's absence.

After Miller completed his testimony, the prosecuting attorney "offer[ed] . . . in evidence the transcript of the proceedings on April 30" containing the argument as to whether or not the Armiger deposition should have been taken. Blondes's attorney objected to the admission of this transcript, pointing out that "I don't know in what proceedings he is offering this." The court then asked the prosecuting attorney, "Don't you think you should make a selection or decision" as to whether the State was proceeding under the indictment or the information. Nevertheless, the prosecuting attorney still refused to make an election. Oral argument ensued concerning the admissibility of the deposition and the April 30th transcript.

Thereafter, Blondes's attorney reiterated his position that the taking of the Armiger deposition and the course of proceedings had, in his view, placed Blondes in jeopardy. Blondes's attorney argued extensively that the information

should be dismissed because "the Defendant . . . has been placed in jeopardy twice for the same offense."

Following argument, the prosecuting attorney finally made an election and entered a *nolle prosequi* with respect to the remaining two counts of the indictment, saying:

> "Frankly, Your Honor, I do not believe that I need in order for a proper valid proceeding or trial to take place on the information, I do not believe that I need to dispose of the indictment, but I would at this time in order to expedite these proceedings and to simplify the considerations before the Court, I would at this time pursuant to the provisions of Maryland Rule 711 enter a nolle prosequi to both of the remaining counts in the indictment only; namely, the first and second counts, and may the record reflect that this action is being taken prior to the time when the indictment or any other charge was called for trial, but at any rate, pursuant to the provisions of Maryland Rule 711, I would enter a nolle prosequi to the indictment.
>
> "Now, that makes unnecessary, I believe, the semantic question of whether I have abandoned the indictment because I now explicitly abandon the indictment and nolle pros it."

The court then asked the defense attorney his position as to the effect of the *nolle prosequi,* and the following colloquy took place:

> "The Court: Mr. Simpson, did you wish to answer the one point as to the effect of the nol pros of the indictment now, which I think is the heart of your point of double jeopardy, is it not?
>
> "Mr. Simpson: That's correct, and I submit that the entry of the nolle precludes the State from going forward because the very charge with which the Defendant is charged has been nolle prossed, which at this stage of the proceedings is tantamount to the acquittal, and it is subsequent to

the taking of the deposition, and the State says that that is not a part of the trial, but I submit that that is the actual taking of testimony. The witness confronted the accused. He was cross examined extensively by the State. He was cross examined by the Defendant, and in all respects that is a step in the proceedings or in the trial, and the nolle pros is a final conclusion of the indictment, which contains each and every one of the allegations of the information, and that the same is entered after trial has occurred and when the retrial was pending, and after the taking of testimony in the second trial, now, the testimony being that of Mr. Armiger, the witness, who is outside of the confines of the Court.

"Thus, the Court's ruling on the motion to dismiss the information should be in the affirmative and the motion should be granted and the Defendant should be discharged."

The court then, "with some misgivings," rejected the double jeopardy claim and overruled the motion to dismiss the information.

Blondes's attorney informed the court of his intention to appeal the denial of the motion to dismiss the information. In response to this, the trial judge "rescind[ed] " the ruling on the motion to dismiss the information and reserved his ruling on it "because I don't think this trial should be delayed." Blondes's attorney objected to this and filed a handwritten notice of appeal with the court.

The proceedings continued, and at the close of the trial the court denied Blondes's motion to dismiss the information, found him guilty under both the first and second counts of the information, and fined him $2,500. Thereafter, Blondes filed another notice of appeal to the Court of Special Appeals. That court affirmed the judgment, *Blondes v. State*, 19 Md. App. 714, 314 A. 2d 746 (1974), and we granted a writ of certiorari.

As we have pointed out on several occasions recently, the

prohibition against twice placing a criminal defendant in jeopardy is applicable in this state as a common law principle and also, since the Supreme Court's decision in *Benton v. Maryland*, 395 U. S. 784, 89 S. Ct. 2056, 23 L.Ed.2d 707 (1969), by virtue of the Fifth and Fourteenth Amendments to the United States Constitution. *Neal v. State*, 272 Md. 323, 327, 322 A. 2d 887 (1974); *Cornish v. State*, 272 Md. 312, 316, 322 A. 2d 880 (1974); *Matter of Anderson*, 272 Md. 85, 92-93, 321 A. 2d 516 (1974); *Pugh v. State*, 271 Md. 701, 704-705, 319 A. 2d 542 (1974); *Couser v. State*, 256 Md. 393, 260 A. 2d 334 (1970); *State v. Barger*, 242 Md. 616, 220 A. 2d 304 (1966).

One aspect of the double jeopardy prohibition which is firmly settled in this state as a common law principle, is that the entry of a *nolle prosequi*, without the defendant's consent, and after jeopardy has attached, operates as an acquittal and precludes further prosecution for the same offense. *Friend v. State*, 175 Md. 352, 355-356, 2 A. 2d 430 (1938); *Williams v. State*, 7 Md. App. 241, 245, 254 A. 2d 376 (1969), *cert. denied*, 256 Md. 749 (1970); *Greathouse v. State*, 5 Md. App. 675, 685-686, 689, 249 A. 2d 207, *cert. denied*, 253 Md. 734 (1969); *Stocker v. State*, 4 Md. App. 275, 279, 242 A. 2d 588, *cert. denied*, 251 Md. 752 (1968), *cert. denied*, 395 U. S. 982, 89 S. Ct. 2142, 23 L.Ed.2d 770 (1969); *Lievers v. State*, 4 Md. App. 219, 221, 242 A. 2d 178 (1968); *Boone v. State*, 3 Md. App. 11, 25-26, 237 A. 2d 787 (1968). The same principle has been adhered to in federal cases applying the Fifth Amendment's double jeopardy prohibition. *Clawans v. Rives*, 70 App. D. C. 107, 104 F. 2d 240, 242, 122 A.L.R. 1436 (D.C. Cir. 1939); *Fletcher v. United States*, 9 Fed. Cas. 274, 275, Fed. Cas. Nos. 4,868 and 4,869 (C.C. D.C. 1844); *United States v. Shoemaker*, 27 Fed. Cas. 1067, 1069-1070, Fed. Cas. No. 16,279 (C.C.D. Ill. 1840); *United States v. Barbosa*, 224 F. Supp. 628, 630 (D. P.R. 1963). *Cf. McNeal v. Hollowell*, 481 F. 2d 1145 (5th Cir. 1973), *cert. denied*, 415 U. S. 951, 94 S. Ct. 1476, 39 L.Ed.2d 567 (1974).

On the other hand, where a *nolle prosequi* is entered before jeopardy attaches, the State is only precluded from prosecuting the defendant further under that indictment,

but the defendant may be proceeded against for the same offense by another indictment or information. *Barrett v. State,* 155 Md. 636, 142 A. 96 (1928). *See also Bassing v. Cady,* 208 U. S. 386, 391-392, 28 S. Ct. 392, 393, 52 L. Ed. 540 (1908); *Newman v. United States,* 410 F. 2d 259, 260 (D.C. Cir.), *cert. denied,* 396 U. S. 868, 90 S. Ct. 132, 24 L.Ed.2d 121 (1969); *United States v. Kimbrew,* 380 F. 2d 538, 540, 3 A.L.R.Fed. 438 (6th Cir. 1967); *Dortch v. United States,* 203 F. 2d 709, 710 (6th Cir.), *cert. denied,* 346 U. S. 814, 74 S. Ct. 25, 98 L. Ed. 342 (1953); *United States v. Fancher,* 323 F. Supp. 1069, 1071 (D. S.D. 1970, *amended* 1971); *United States v. Dorsch,* 156 F. Supp. 61 (W.D. Pa. 1957).

Thus, the critical question in this case is whether jeopardy had attached to Blondes at the time the *nolle prosequi* was entered.

The Supreme Court has held "that a defendant is placed in jeopardy in a criminal proceeding once the defendant is put to trial before the trier of the facts, whether the trier be a jury or a judge" or that " 'jeopardy attaches' when the trial commences . . . ." *United States v. Jorn,* 400 U. S. 470, 479, 480, 91 S. Ct. 547, 554, 555, 27 L.Ed.2d 543 (1971). The problem in particular cases is in determining when a defendant is "put to trial" or when "the trial commences."

It is generally held that, with respect to a jury trial, a defendant is placed in jeopardy when the jury is selected and sworn. *Illinois v. Somerville,* 410 U. S. 458, 467, 93 S. Ct. 1066, 1072, 35 L.Ed.2d 425 (1973); *United States v. Jorn, supra,* 400 U. S. at 474-478, 91 S. Ct. at 552-553, 27 L.Ed.2d at 550-552; *United States v. Sisson,* 399 U. S. 267, 303-305, 90 S. Ct. 2117, 2137-2138, 26 L.Ed.2d 608, 631-632 (1970); *Green v. United States,* 355 U. S. 184, 188, 78 S. Ct. 221, 224, 2 L.Ed.2d 199, 204, 61 A.L.R.2d 1119, 1125 (1957).

As to a non-jury trial, the normal rule is that the trial commences, and thus jeopardy attaches, when the judge begins to hear or receive evidence. *Newman v. United States, supra,* 410 F. 2d at 260; *United States v. Kimbrew, supra,* 380 F. 2d at 540; *Clawans v. Rives, supra,* 104 F. 2d at 242; *McCarthy v. Zerbst,* 85 F. 2d 640, 642 (10th Cir.), *cert. denied,* 299 U. S. 610, 57 S. Ct. 313, 81 L. Ed. 450 (1936);

*United States v. Fancher, supra,* 323 F. Supp. at 1071; *United States v. Foster,* 226 A. 2d 164, 166 (D.C. 1967). Usually, this will be when the first witness begins to testify. However, it could be when documentary evidence is submitted, such as a stipulation or the record of prior proceedings, *Application of Nolan,* 15 A.D.2d 78, 222 N.Y.S.2d 635 (1961), *aff'd, Nolan v. Court of General Sessions,* 11 N.Y.2d 114, 227 N.Y.S.2d 1, 181 N.E.2d 751 (1962), or when the defendant pleads guilty to the charges and thus establishes his guilt, *United States v. Barbosa, supra,* 224 F. Supp. at 630.[3]

There is a minority view that in a court trial, jeopardy attaches when the first witness is sworn. *M. v. Superior Court of Shasta County,* 4 Cal. 3d 370, 93 Cal. Rptr. 752, 482 P. 2d 664, 668 (1971); *People v. Sturdy,* 235 Cal.App.2d 306, 314, 45 Cal. Rptr. 203, 209 (1965); *People v. Ayala,* 138 Cal.App.2d 243, 248, 291 P. 2d 517, 520 (1955); 3 Wharton's

---

**3.** There may be in certain types of cases a conflict between the principle that jeopardy attaches when the jury is selected and sworn, and the principle that in non-jury situations, jeopardy attaches when the judge hears evidence.

There have been numerous federal court cases recently where the trial judges at preliminary stages dismissed indictments on the ground that the defendants were not in fact guilty of the offenses charged. These dismissals were based not on the sufficiency of the indictments but upon "facts" or "evidence" submitted to the judge, such as the facts set forth in a motion to dismiss, documents attached to a motion to dismiss, the facts delineated in the government's response to the motion to dismiss, a stipulation between the parties, the facts set forth in an administrative file (*e.g.,* the defendant's selective service record), etc. In all of these cases, the dismissals of the indictments occurred prior to the time that the jury was to be selected or prior to any waiver of the right to a jury trial. The federal courts of appeal appear to be split on the question of whether jeopardy had attached at the time of dismissal. Holding that jeopardy had not attached in such situations, are United States v. Serfass, 492 F. 2d 388 (3d Cir. 1974); United States v. Velazquez, 490 F. 2d 29 (2d Cir. 1973); United States v. Pecora, 484 F. 2d 1289 (3d Cir. 1973); United States v. Brown, 481 F. 2d 1035 (8th Cir. 1973). To the contrary, holding that jeopardy had attached, are United States v. Southern Railway Company, 485 F. 2d 309 (4th Cir. 1973); United States v. Rothfelder, 474 F. 2d 606 (6th Cir.), *cert. denied,* 413 U. S. 922, 93 S. Ct. 3066, 37 L.Ed.2d 1044 (1973); United States v. McCreery, 473 F. 2d 1381 (7th Cir. 1973); United States v. Hill, 473 F. 2d 759 (9th Cir. 1972); United States v. Ponto, 454 F. 2d 647, *on rehearing en banc,* 454 F. 2d 657 (7th Cir. 1971); United States v. Findley, 439 F. 2d 970 (1st Cir. 1971). The Supreme Court has recently granted a writ of certiorari and heard oral argument in one of these cases, United States v. Serfass, *supra, certiorari granted,* 416 U. S. 955, 94 S. Ct. 1967, 40 L.Ed.2d 305 (1974), argued December 9, 1974, and presumably the issue will soon be resolved.

446

Criminal Evidence (13th ed. 1974 Annual Supplement) § 655 at 37. This rule, of course, can only be applied where the initial evidence is testimonial. Moreover, in most cases it will make no difference whether jeopardy attaches when the first witness is sworn or when the first witness begins to testify, as one will usually follow the other with nothing occurring between the two events. *But see Newman v. United States, supra,* where the prosecution entered a *nolle prosequi* after all of the witnesses were collectively sworn but before the first witness began to testify, and the court, adopting the "hearing the evidence" rule, held that jeopardy had not attached and that, therefore, the defendant could be prosecuted again for the same offense.

In our opinion, at the time of the *nolle prosequi* the trial had commenced and jeopardy had attached to Blondes under either of the above-mentioned tests. Mr. Armiger, whose deposition had been taken the week before, had been one of the principal witnesses against Blondes at his first trial. After the commencement of proceedings on May 7, 1973, and before the entry of the *nolle prosequi,* (1) the prosecuting attorney asked the court for a ruling on the admissibility of Armiger's deposition, (2) a witness (Mr. Miller) was then sworn and testified as to the absence of Armiger, which directly related to the admissibility of the deposition, and (3) the prosecuting attorney offered into evidence the transcript of the court proceedings on April 30, 1973. When the prosecution asks for a ruling on the admissibility of the chief documentary evidence against a defendant, when it begins offering other documentary evidence against the defendant, and when it offers the testimony of a witness as a necessary condition to the admissibility of such evidence, then the court has begun "to hear the evidence." And under the alternate test of "swearing the first witness," jeopardy attached when Mr. Miller took the oath.

The State relies on the fact that Armiger's deposition was not actually admitted into evidence until after the *nolle prosequi,* and that the first witness whose testimony directly related to "the general issue of guilt" testified after the entry of the *nolle prosequi.* The State's approach would

require a court, before deciding whether jeopardy attached, to examine the testimony and other evidence in order to determine which evidence directly went to the issue of guilt and which may have only indirectly related to guilt. No authority is cited, and we are aware of none, supporting such an approach. Moreover, the determination of when jeopardy attaches should be as clear-cut as possible, and not dependent upon a case-by-case analysis of the evidence received by the court at different stages in the proceedings. Finally, we believe that the position urged by the State is inconsistent with the principle that " 'jeopardy attaches' when the trial commences . . . ." *United States v. Jorn, supra,* 400 U. S. at 480, 91 S. Ct. at 555.

In light of our holding that jeopardy had attached to Blondes as a result of the proceedings on the trial date prior to the entry of the *nolle prosequi,* it is not necessary for us to pass upon the petitioner's arguments that jeopardy had attached at an earlier date, such as when the Armiger deposition was taken, and we make no intimation that it had.[4] Similarly, we need not reach petitioner's argument that, in light of our recent decision in *Neal v. State, supra,* 272 Md. 323, the trial court erred in reserving its ruling until the end of the trial on the motion to dismiss based upon double jeopardy and in not permitting an immediate appeal of the double jeopardy issue.

> *Judgment of the Court of Special Appeals reversed.*
> *Case remanded to that court with directions to reverse the judgment of the Circuit Court for Montgomery County.*
> *Costs to be paid by the County Council of Montgomery County.*

---

4. It has even been suggested that the right not to be placed in double jeopardy precluded the State from entering a *nolle prosequi* of the indictment, and filing a new information containing the same charges, at any time after Blondes's first trial. The theory seems to be that jeopardy attached to Blondes during his first trial and that, although he waived his right not to be placed twice in jeopardy by appealing, the waiver was for purposes of the initial indictment only. *Cf.* Friend v. State, *supra. But see*

---

United States v. Ball, 163 U. S. 662, 672, 16 S. Ct. 1192, 1195, 41 L. Ed. 300
(1896) (a defendant who seeks to have his conviction set aside "may be tried
anew upon the same indictment, *or upon another indictment,* for the same
offense of which he had been convicted") (emphasis supplied); United States
v. Tateo, 377 U. S. 463, 465-466, 84 S. Ct. 1587, 1589, 12 L.Ed.2d 448 (1964);
United States v. Ewell, 383 U. S. 116, 121, 86 S. Ct. 773, 777, 15 L.Ed.2d 627
(1966); United States v. Jasso, 442 F. 2d 1054, 1056 (5th Cir.), *cert. denied,*
404 U. S. 845, 92 S. Ct. 146, 30 L.Ed.2d 81 (1971). As stated above, in light of
our holding that jeopardy had attached to Blondes anew, during the second
trial, and before the *nolle prosequi* was entered, we do not reach this issue.