684

931 A.2d 1135

**Jack ODEM and Michael Brassel a/k/a Mike Brazzell**

v.

**STATE of Maryland.**

**Nos. 2261, 2262, Sept. Term, 2006.**

Court of Special Appeals of Maryland.

Sept. 10, 2007.

Gavin M. Patashnick (Schlachman, Belsky & Weiner, PA, Marc Zayon, Roland, Walker & Associates on the brief), Baltimore, for appellant.

Steven L. Holcomb (Douglas F. Gansler, Attorney General on the brief), Baltimore, for appellee.

Argued before DAVIS, HOLLANDER and SHARER, JJ.

DAVIS, J.

This case arises from the denial of a Motion to Dismiss filed by appellants, Jack Odem and Michael D. Brassel.[1]  Appel-

---

1. Both appellants claimed misspellings of their last names at proceedings in the District Court for Baltimore City. Odem stated that his name was spelled Odom and Brassel corrected the charging document's mispelling of his name from Brazzle to Brassle.  The Internal Investigation Division report lists Officer Michael D. Brassell and Officer Jack H. Odom, Jr. as Respondents.  The brief filed with this Court lists the parties as "Jack Odem and Michael Brassel a/k/a Mike Brazzell."  We shall refer to appellants as Odem and Brassel, consistent with their joint brief.

lants were served with Baltimore City District Court criminal summonses on November 11, 2005, charging Odem with three counts of second-degree assault and Brassel with one count of second-degree assault. The alleged victims, Akhenaton Ramses Bonaparte, IV, Patrice Shelton and Grace Broadwater, filed applications for a statement of charges on October 29, 2005, November 10, 2005 and November 11, 2005, respectively.

Counsel for appellants filed omnibus motions with their appearances that included Motions for Speedy Trial and Motions to Dismiss. The District Court thereafter granted the motions to dismiss subsequent to a May 5, 2006 argument.

On May 26, 2006, the State's Attorney for Baltimore City filed four separate criminal informations in the Circuit Court for Baltimore City against Odem and Brassel for second-degree assault based upon the same incident. Appellants filed a Joint Motion to Dismiss on September 19, 2006 and the trial court conducted a hearing on October 26, 2006, after which the motions were denied. Appellants filed a timely interlocutory appeal and, on March 21, 2007, this Court granted appellants' request to consolidate and present the following question for our review:

I. Did the trial court err in denying [a]ppellants' Joint Motion to Dismiss?

## FACTUAL AND PROCEDURAL BACKGROUND

On October 23, 2005,[2] appellants were involved in an altercation with the three alleged victims that occurred outside of the Maria D's Restaurant located in or around the 1000 block of Light Street in Baltimore City.

In their respective applications for charges, the alleged victims claimed that the police officers were "on duty" at the time of the altercation. Subsequent to the three applications for charges filed by the alleged victims, appellants were served with District Court criminal summonses. The first

---

2. Testimony at trial alternatively related the date as October 22, 2005. We shall adhere to the October 23, 2005 date for consistency.

trial date, December 19, 2005, was postponed in advance on December 14, 2005 and reset for January 18, 2006. On January 11, 2006, the State provided appellants with witness statements and related documents in connection with the investigation.

Omnibus motions were filed and appearances of counsel were entered on December 29, 2005 and January 12, 2006 for Brassel and Odem, respectively. Appellants appeared for trial on January 18, 2006 and both defense attorneys requested postponements that the court granted and the court reset trial for February 28, 2006. The District Court postponed trial on February 28, 2006, due to the unavailability of a judge and reset the case for trial on May 5, 2006.

When the case was called for trial in the District Court on May 5, 2006, appellant's attorney stated that they were "[p]roceeding by way of trial your honor but there's [sic] some Preliminary Motions I believe that we'd like to argue." Not guilty pleas were entered and appellants waived their right to jury trial and elected a bench trial.

After the District Court found that a jury trial had been waived, appellants' counsel informed the court that two preliminary matters with respect to the charging documents had to be addressed. Initially, defense counsel proffered that complainants Shelton and Broadwater were minors and unable to file complaints until they reached the age of majority. The court reserved ruling on that motion stating, "[w]ell, for reasons previously indicated I think the best course at this stage is to [reserve] ruling ... you will have the, the chance to ..., fully explore this issue as the trial progresses and ... I'll, I'll make a final ruling ... before the trial completes." Appellants view this statement by the court as proof that it was conducting trial.[3]

---

3. The State argues that, "contrary to any implication by [a]ppellants on appeal, ... this statement by the District Court related to a different preliminary motion." In its brief, the State does not clarify the preliminary motion to which it refers.

Appellants' argument in support of their second preliminary matter was that the charging documents were defective and in contravention of section 2–608 of the Courts and Judicial Proceedings Article, requiring an investigation before charges can be filed against an officer. Appellants contended that the defects arose because appellants were on duty or put themselves on duty by effectuating the arrest of Bonaparte and the State did not conduct an investigation or make recommendations to the District Court Commissioners before issuing the charging documents.

Appellants' counsel argued that the officers were on duty, requiring that the court conduct the 2–608 procedure, *supra;* that the procedure was not followed; and, if the court ruled in their favor, the charging documents would be defective and, therefore, the charges should be dismissed. Appellants and the State disagreed as to whether there was an investigation or whether the officers were on duty at the time of the altercation and subsequent arrest. The District Court judge noted that it appeared to him that "there [was] a dispute as to those facts and some testimony [was] going to have to be uh taken for the court to make *a determination on this motion* . . . ." (Emphasis added.)

Appellants then argued their motions to dismiss asserting, *inter alia,* that the State failed to comply with Maryland Code Courts & Judicial Proceedings § 2–608[4] because the officers were on duty at the time of the alleged attacks by virtue of the fact that they were effectuating an arrest of Bonaparte. Preliminarily, the State argued there had been an investigation and that the section did not apply because the officers were not on duty.

### Testimony of A. Thomas Krehely, Jr., Chief of the Police Misconduct Division

In addressing that second preliminary matter, the State called A. Thomas Krehely, Jr., Assistant State's Attorney,

---

4. Unless otherwise indicated, the Court shall refer to Md.Code Ann., Cts. & Jud. Proc. (2006 Repl.Vol.).

Chief of the Police Misconduct Division. Krehely was sworn and testified that he received a faxed statement of charges on November 3, 2005 for appellant Odem. He contacted the Internal Affairs Division, which subsequently forwarded him a five or six page report, outlining the investigation of both appellants. Krehely did not recommend charges because, on his review of the facts, appellants "were not exercising their official duties at the time this incident occurred and under the statute, [] that is the only way we can make a recommendation as if the act occurs in the course of executing their duties." Krehely summarized the facts contained in the Police Department investigative report faxed to him, including statements from Lieutenant Butler and Sergeant Murphy, who gave statements that both appellants were extremely intoxicated when they arrived on the scene, in violation of Departmental General Orders.[5]

Krehely testified on cross-examination that he had not seen appellant Brassel's Application of Charges and that his inquiry into the matter was limited to the Internal Affairs report. Krehely further testified on cross-examination that he consulted with Deputy State's Attorney Haven Kodak, Internal Affairs Detective Mike Corran and the author of the investigative report, Sergeant Cherry Albright, but that he never spoke to any of the officers on the scene, appellants, witnesses or the Baltimore City State's Attorney prior to making his decision. He further testified that, although he had received Bonaparte's Application for Statement of Charges, he had not viewed either Shelton's or Broadwater's Application for Statement of Charges. Finally, Krehely had had a discussion with the court commissioner regarding certain people (apparently the complainants) designated INAUDIBLE in the record, but, from this discussion, he never learned whether "they were going to or had taken out charges."

---

5. The report indicated that "Lieutenant Butler and Sergeant Murphy advised [Detective Sergeant Sheri Albrecht, author of the report] that both Officer's [sic] Brassell and Odom appeared to be extremely intoxicated. . . . Neither were [sic] administered a breathalyzer test, nor were they suspended for this incident."

## Argument of Counsel and Decision

Essentially, contending that the court must focus on the officers' acts in determining whether they were committed "in the course of executing the duties of [a] law-enforcement officer," the Assistant State's Attorney argued:

> Thank you your honor and thank you Mr. Krehely. I would first uh I would your honor I'm sorry I don't have a separate copy. I'll give it to you. *Hoyer v. Humphries* is a Court of Appeals case from "1991" if I may read the language uh, "*A police officer may be on duty twenty-four hours a day, necessity may be on call and may under certain circumstances have an obligation to act under law enforcement capacity even when on his own time. That does not have or lead to the conclusion that the officers [are] always acting in furtherance of the state's business of law enforcement and that all conduct is incidental to police work. Even though police may be said to be on duty all the time cases regularly hold that [a] police officer act[s] outside the scope of his employment when he acts for his own personal reasons and not as furtherance of the employer's law enforcement function.*" Uh, this involves a case where a police assaulted a uh one or two victims your honor and I would provide this too if you would like to review the case.

(Emphasis added).

When asked whether § 2–608 is invoked whenever there is an allegation of criminal behavior on the part of a police officer, the Assistant State's Attorney responded:

> Whether or not the behavior was uh part of a lawful, say a lawful arrest or a lawful uh law enforcement action. Um, if not of course it does not fall within the statute and Mr. Krehely made that determination after reviewing the facts that these are—this is criminal behavior.

* * *

These were not—think this was criminal activity. It was not uh . . . . excuse me, it was not performed as a matter of

uh, it was not a law enforcement duty. It was not within the scope of their employment. Um, that is sort of that is factual determination in which Mr. Krehely made of course. Your honor we'll also have to make some facts of the Proffer, the officers were extremely intoxicated. They did not initially identify themselves. They provoked and assaulted the victims uh not without identifying themselves as officers. Uh, it was certainly an unlawful arrest and assaultive behavior that is the State's position.

Counsel for appellants, in arguing that the officers were on duty, insisted that their clients were engaged in effectuating an arrest, quintessentially a function of law enforcement. Moreover, they alluded to statements in the complainants' applications in which it was asserted, *inter alia,* that the complainants referred to appellants having been on duty and "revealing that they were cops."

In issuing its ruling, the District Court opined:

Uh thank you. Alright um, the court appreciates uh the arguments of counsel on both sides as the court indicated uh I came into this not knowing anything about the case. Um, counsel have done excellent jobs of uh presenting the issues clearly here made. Um, I have looked carefully at uh CJ 2–608, Subsection B. I believe that that language has to be read um in such a way as would give meaning to that section. Uh, if every time a police officer uh committed a criminal offense uh by virtue of that fact he would not be (INAUDIBLE) of executing his duties. There would be no reason for this statute to exist in my view. Uh, the statute does exist for cases where there is an allegation of an offense allegedly committed in the course of executing the duties of the law enforcement officer. The court has review[ed] each of the applications in this case which is what I think I must look at because it is the allegations of the application that Subsection B deals with and I think a fair reading of all of those applications uh does indicate to this court that um, those applications do allege an offense committed in the course of executing the duties of a law enforcement officer. I'm not making a factual finding that

that's what's occurred I'm just making a finding that that's what is alleged in each of those applications. Once I make that finding uh it is a prerec ... prerequisite according to Subsection D of CJ 2–608 that the State's Attorney uh not only make investigation which Mr. Krehely indicated was made in this case *but also that uh the State's Attorney write (INAUDIBLE)recommendation there is no evidence before the court that there was any recommendation by the State's Attorney's Office.* I do agree with Ms. Embry that it is not the State's Attorney herself; Ms. Jessamy who has the duty to do this but the authorized representatives of her office must both investigate and make a recommendation unless they both of those things uh *Subsection D says that a Statement of Charges may not be filed.* Accordingly I must deny and grant in the motion to dismiss with respect to each of the defendants on each of these cases.

The State thereafter filed new criminal informations in the Circuit Court for Baltimore City on May 26, 2006. At the hearing on appellants' Joint Motion to Dismiss on October 26, 2006, the circuit court initially addressed the propriety of the State's decision to file new criminal informations in the circuit court, rather than appeal the decision of the District Court:

[APPELLANTS' COUNSEL]: He ultimately granted our motion to dismiss because of the overall violations and the Courts and Judicial Proceedings violations that had occurred. That was never appealed. That is, as a matter of law, a final decision in this matter.

Even though the State tries to argue in their motion, as kind of a back-door way appeal, that he was incorrect, but I submit to you, Your Honor, that is a final order. It was not appealed. They did not take any exceptions to those findings.

Thereafter, these defendants were recharged with the identical crime, for the identical alleged crimes. There's actually, I think, a total of, between the two of them, Mr. Brassel's charged with one assault, and Mr. Odem's charged with assaulting three people. And everyone says while they were working as police officers, this occurred.

Mr. Corheli (phonetic), at the trial, was called as a witness for the State. Mr. Corheli, Assistant State's Attorney, testified at that hearing about both facts—

THE COURT: You said at the trial. It really wasn't a trial, was it?

[APPELLANTS' COUNSEL]: I think it was a trial. The witnesses were sequestered. The matter was called for trial, and we had a hearing, and evidence had been submitted. So, yes, I think—and I'll cite the cases, but I think that constitutes the beginning of a trial under both Maryland law—

THE COURT: Well, you put some cases in your brief that I haven't had a chance to read yet but, you know, in this Court certainly, it's not uncommon for us to hold hearings prior to criminal trials on suppression and other issues. Jeopardy doesn't attach at that point.

[APPELLANTS' COUNSEL]: In the District Court, there are specific rules governing specific motions which control. And at the District Court level, Your Honor, I think we've briefed it. But at the District Court level, there is a rule, and it's Maryland Rule 4–251.

THE COURT: And it says?

[APPELLANTS' COUNSEL]: It deals with motions in the District Court.

THE COURT: And what does it say?

[APPELLANTS' COUNSEL]: And, essentially, Your Honor, what it says is if it's a defective charging document, then it has to be handled preliminarily. But that's not what we filed our motion for, and that's not what we were alleging at the time of that hearing.

It says all other motions—and I think it's B–1 in the B Section, the very last sentence—and I don't have the statute in front of me. But it seems to me the last part of that paragraph deals with all other motions may be entertained at the appropriate time.

THE COURT: Yes.

[APPELLANTS' COUNSEL]: So District Court procedure is quite different than this Court's procedure, the way it handles its motions.

THE COURT: It doesn't say anything about jeopardy.

[APPELLANTS' COUNSEL]: No, but it says—it doesn't—there are certain mandatory motions, and there are certain non-mandatory motions that must be heard before trial. In fact, it talks about certain things regarding—let me get to the—

THE COURT: Courts can reserve issues for trial.

[APPELLANTS' COUNSEL]: But that wasn't done here. It wasn't done. We've got the transcript. Nothing was reserved by the Judge who heard this case. Nothing. He reserved on nothing.

THE COURT: My point. He didn't wait until trial started. He decided as a preliminary matter, didn't he?

[APPELLANTS' COUNSEL]: No. No. It wasn't a preliminary matter. This trial had been called—they were called for trial, and witnesses were put on and sworn.

THE COURT: I understand. Okay.

[APPELLANTS' COUNSEL]: But if you look at Section B—

THE COURT: Um-hum.

[APPELLANTS' COUNSEL]:—it talks about what has to be heard before trial, which is not what we're dealing with. It also says that the offense shall be made and determined before the first witness is sworn. So by definition—

THE COURT: Where does it say that?

[APPELLANTS' COUNSEL]: The submittal of Paragraph B.

THE COURT: Okay.

[APPELLANTS' COUNSEL]: So we certainly didn't have a defective charging document alleged, or there's been a clear violation. Now, at the District Court level, it's presumed Judge Mann knew what he was doing. It wasn't

appealed, and it wasn't discussed at any level regarding that issue. We had a—we had a final judgment.

THE COURT: Why isn't that an estoppel issue?

[APPELLANTS' COUNSEL]: It is an estoppel—the State should be estopped from arguing it again.

THE COURT: And we're arguing double jeopardy, and we're arguing speedy trial. But if there's a final determination that they can't go forward on the merits, why aren't they estopped?

[APPELLANTS' COUNSEL]: They are estopped.

THE COURT: That wasn't part of the brief, though, was it?

[APPELLANTS' COUNSEL]: No, it was not part of the brief. There is a final determination. It was—

THE COURT: How do you get around that?

[PROSECUTOR]: Your Honor, I'm not sure that we had a basis for appeal. I don't know that there's a procedure for appealing District Court preliminary decisions.

THE COURT: You mean if the case is thrown out at the District Court, the State can't appeal?

[PROSECUTOR]: Based on a defective charging document, I don't believe we can under *State v. Taylor*, but—

THE COURT: That's not part of the briefing here as to the finality of any of it, so I don't know the answer to that question, but—

[APPELLANTS' COUNSEL]: There's no allegation of defective charging—the charging document was issue[d] by the Court Commissioner without a defect. The statutory violations are what was briefed and filed with the District Court.

So I need to make it very clear that we never claimed and aren't claiming now that there's a defective charging document. What we are claiming is that there were violations of two statutes, which are briefed, Your Honor, which do become a final judgment by the District Court.

Subsequently, appellants argued that jeopardy attached as a result of the District Court hearing and subsequent grant of appellants' motions to dismiss. The court disagreed and issued its order finding that

> the motion to dismiss presented to the District Court constituted a challenge to the State's charging document, was in the nature of a preliminary motion and did not address the guilt or innocence of the defendants. The witness testimony presented in the District Court and any documentary evidence perused by the District Court were considered solely for the purpose of determining the defendants' motion to dismiss and did not cause double jeopardy to attach, thereby barring the prosecution of defendants in the Circuit Court. Moreover, under the circumstances of this case, the Court does not believe that the defendants' constitutional speedy trial rights were violated and, for these reasons, the amended joint motion to dismiss is DENIED.

We shall include additional facts, *infra*, as warranted.

## ANALYSIS

In this appeal, appellants ask this Court to determine at what point in a proceeding jeopardy attaches and whether, on the facts extant, jeopardy attached in the instant case as a result of the District Court's disposition of the motion to dismiss.

### I

As we have mentioned, preliminarily, at the hearing on appellants' Joint Motion to Dismiss, the Assistant State's Attorney, in response to the court's question as to whether the State should be estopped because it did not pursue an appeal, stated, "I'm not sure that we had a basis for appeal. I don't know that there's a procedure for appealing District Court preliminary decisions." The court then asked, "You mean if the case is thrown out at the District Court," the State can't appeal? The prosecutor replied, "Based on a defective charg-

ing document, I don't believe we can under *State v. Taylor,*
but—"

■ Because we wish not to confuse procedural apples with
constitutional oranges, we address summarily the issue wheth-
er the State could appeal from the District Court before we
focus on the only issue properly before us, *e.g,* whether the
District Court proceeding was limited to a preliminary matter
not determinative of the merits, *viz,* the guilt or innocence of
appellants, although the issue of the appeal from the District
Court is not before us. Despite the uncertainty as to whether
the State could have elected to appeal the District Court's
decision, Maryland law is clear that that option was available
to it. Lest there be any doubt, the State, however, was not
required to pursue that avenue.

Appellants cite Md.Code Ann., Cts. & Jud. Proc. § 12–
401(d),(g),[6] which provides in pertinent part that:

(f) *De novo and on record appeals.*—In a civil case in which
the amount in controversy exceeds $ 5,000 exclusive of
interest, costs, and attorney's fees if attorney's fees are
recoverable by law or contract, in any matter arising under
§ 4–401(7)(ii) of this article, and in any case in which the
parties so agree, an appeal shall be heard on the record
made in the District Court. *In every other case,* including a
criminal case in which sentence has been imposed or sus-
pended following a plea of nolo contendere or guilty, and an
appeal in a municipal infraction or Code violation case, *an
appeal shall be tried de novo.*

(g) *Right to a jury trial.*—In a criminal appeal that is tried
de novo, there is no right to a jury trial unless the offense
charged is subject to a penalty of imprisonment or unless
there is a constitutional right to a jury trial for that offense.

(Emphasis added). The section applies to cases in which a
final determination has been pronounced. Although the dis-
missal of the State's indictment foreclosed the matter with

---

**6.** Unless otherwise indicated, the Court shall refer to Md.Code Ann.,
Cts. & Jud. Proc. (2006 Repl.Vol.).

regard to the District Court, the State had two options in the Circuit Court for Baltimore City; it could appeal or file new charges.

As to circuit courts, the Courts and Judicial Proceedings Article provides that "[t]he State may appeal from a final judgment granting a motion to dismiss or quashing or dismissing any indictment, information, presentment, or inquisition." Md.Code Ann., § 12–302(c)(2). We have opined that "[i]n Maryland the State may either appeal the dismissal of an indictment *or seek a new indictment or both* so long as the State's action is not deemed to be oppressive and, thus, a possible violation of due process of law. In sum, the State must act in good faith." *Irvin v. State,* 23 Md.App. 457, 463, 328 A.2d 329 (1974) (emphasis added) (holding that "the Circuit Court for Baltimore County was not divested of jurisdiction to try the appellant on a new indictment notwithstanding the State's appeal from a dismissal of prior indictments arising out of the same facts"). *See also State v. Pike,* 287 Md. 120, 123, 410 A.2d 1079 (1980) (holding that dismissal of an indictment is a final appealable order); *State v. Mayes,* 284 Md. 625, 399 A.2d 597 (1979), *but see State v. Stanley,* 34 Md.App. 393, 367 A.2d 27 (1977) (holding that a trial judge's ruling that "the charges are dismissed" cannot semantically be manipulated by the State to disguise an obvious not guilty verdict). In sum, the State could have appealed to the circuit court but was not required to do so. An appeal by the State from the District Court's grant of the Motion to Dismiss would have been tried *de novo* pursuant to § 12–401(f). It would not, therefore, have been bound by the District Court's ruling on the motion. The State had the option, which it exercised, to file new charges.

## II

Appellants argue that their right to be free from double jeopardy under the United States and Maryland Constitution was violated when the circuit court denied their Joint Motion to Dismiss. The State, according to appellants, should have appealed the decision of the District Court but, instead, filed

new charges for the same crimes in the circuit court. According to appellants, the State should not be permitted to argue to the circuit court that it was "not sure that [the State] had a basis for appeal" and, simultaneously, "recharge [a]ppellants after a final judgment."

■ Maryland recognizes the prohibition against twice placing a criminal defendant in jeopardy as both a common law principle and by virtue of the Fifth and Fourteenth Amendments to the United States Constitution. *See Blondes v. State,* 273 Md. 435, 443, 330 A.2d 169 (1975) (recognizing the result of the Supreme Court's decision in *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) (holding that the Fifth Amendment prohibition against double jeopardy was applicable to the States through the Fourteenth Amendment's Due Process Clause)).

> The Supreme Court has held 'that a defendant is placed in jeopardy in a criminal proceeding once the defendant is put to trial before the trier of the facts, whether the trier be a jury or a judge' or that [" 'jeopardy attaches' when the trial commences....' "] *United States v. Jorn,* 400 U.S. 470, 479, 480, 91 S.Ct. 547, 554, 555, 27 L.Ed.2d 543 (1971). The problem in particular cases is in determining when a defendant is 'put to trial' or when 'the trial commences.'

*Blondes,* 273 Md. at 444, 330 A.2d 169.

The critical question in *Blondes* was whether jeopardy attached after a *nolle prosequi* was entered. *Id.* The Court held that, in a non-jury trial, jeopardy attaches when trial commences and, thus, "when the judge begins to hear or receive evidence." *Id. See also Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975) (holding that, "[i]n a nonjury trial, jeopardy attaches when the court begins to hear evidence"). Jeopardy does not attach and there is no application of the Constitutional prohibition until the defendant is " 'put to trial before the trier of facts, whether the trier be a jury or a judge.' " *Id.* (quoting *Jorn, supra,* 400 U.S. at 479, 91 S.Ct. at 554).

The *Serfass* Court opined that, where proceedings were initiated by the defendant's motion to dismiss an indictment and the right to a jury trial had not yet been waived, the petitioner had not yet been " 'put to trial before the trier of facts.' " *Id.* at 388, 95 S.Ct. at 1062. When the court has no jurisdiction other than to grant or deny the motion, jeopardy does not attach. *Id.* at 389, 95 S.Ct. at 1063.

█ In order for jeopardy to attach, a defendant must risk a determination of guilt. *Id.* at 392, 95 S.Ct. at 1064 (recognizing that, when a criminal prosecution is terminated prior to trial, the defendant is spared expense, delay, strain and embarrassment that attend a trial). Moreover, an appeal of a decision on a motion to dismiss would not allow the prosecution to persuade the trier of fact to judge the defendant's guilt. *Id.* at 391, 95 S.Ct. at 1064. Thus, a defendant does not risk a determination of guilt when a trial court determines a preliminary matter without reaching the merits of the case.

█ A determination of a preliminary matter that does not premise its dismissal on grounds that the defendant is not guilty of the charge does not provide for the attachment of jeopardy. *Blondes,* 273 Md. 435, 445, 330 A.2d 169 (recognizing the difference between dismissals based upon the sufficiency of the indictments versus dismissal upon facts or evidence submitted to the judge). In *Blondes,* the Court held that jeopardy attached because of a deposition, taken a week before, of one of the principal witnesses against Blondes at his first trial. *Id.* at 446, 330 A.2d 169. After commencement of proceedings and before entry of the *nolle prosequi,* the prosecutor asked the court for a ruling as to the deposition's admissibility. *Id.* at 446, 330 A.2d 169. A witness was thereafter sworn and offered testimony directly related to the admissibility of the deposition and the prosecutor then offered for admission a transcript of the trial proceeding. *Id.* The Court opined:

> When the prosecution asks for a ruling on the admissibility of the chief documentary evidence against a defendant, when it begins offering other documentary evidence against

the defendant, and when it offers the testimony of a witness as a necessary condition to the admissibility of such evidence, then the court has begun 'to hear the evidence.' *Id.* The Court concluded that the determination of when jeopardy attached "should be as clear-cut as possible, and not dependent upon a case-by-case analysis of the evidence received by the court at different stages in the proceedings." *Id.* at 447, 330 A.2d 169.

In the case *sub judice,* appellants had waived their right to a jury trial and counsel stated to the judge in the District Court that the "defense [had] two preliminary motions with respect to the ... charging documents." Counsel proceeded to argue the status of the two complainants as minors and after, the court asked for any other preliminary motions, they argued the motions to dismiss.

Appellants' motion was predicated upon the State's failure to conduct a proper investigation. A. Thomas Krehely, Jr., Assistant State's Attorney, Chief of the Police Misconduct Division, was called in response to what the judge characterized as a dispute as to whether the investigation was conducted and that "some testimony [was] going to have to be ... taken for the court to make a determination on this motion. . . ."

After receiving a faxed statement of charges on November 3, 2005 for appellant Odem, his investigation was limited to the following. He reviewed a five or six page report outlining the investigation of both appellants, but did not recommend charges because, in his view, appellants "were not exercising their official duties at the time this incident occurred and under the statute." He then summarized the facts contained in the investigative report, including statements from Lieutenant Butler and Sergeant Murphy that both appellants were extremely intoxicated when they arrived on the scene in violation of Departmental General Orders.

On cross-examination, he testified that he had not seen appellant Brassel's Application of Charges; that his inquiry into the matter was limited to the Internal Affairs report; that

he consulted with Deputy State's Attorney Haven Kodak, Internal Affairs Detective Mike Corran and the author of the investigative report, Sergeant Cherry Albright; however, he never spoke to any of the officers on the scene, appellants, witnesses or the Baltimore City State's Attorney prior to making his decision. Finally, although he had received Bonaparte's Application for Statement of Charges, he had not seen either Shelton's or Broadwater's Application for Statement of Charges and, although he had had a discussion with the court commissioner regarding ostensibly the complainants, he never learned whether "they were going to take out or had taken out charges." None of the foregoing testimony of Krehely established or was intended to establish either directly or circumstantially the guilt of the appellants. Unlike the deposition of a fact witness against the defendant in *Blondes, supra,* the admissibility of which the prosecutor sought the court's ruling, the sum total of Krehely's testimony was confined to his investigation to determine whether appellants' conduct during the incident under review came within the ambit of Section 2-608 of the Courts and Judicial Proceedings Article, requiring that the charges be referred by the State's Attorney's Office.

The District Court, in its findings in regard to the alleged victims' applications for statements of charges, stated that

a fair reading of all of those applications ... does indicate to this court that ..., those applications do allege an offense committed in the course of executing the duties of a law enforcement officer. I'm not making a factual finding that that's what's occurred I'm just making a finding that that's what is alleged in each of those applications.

The District Court did not undertake to pronounce appellants' innocence. *See Farrell v. State,* 364 Md. 499, 509, 774 A.2d 387 (2001) (holding that procedural errors do not affect the efficacy of a verdict and not guilty verdicts need not be entered into the docket to bar subsequent prosecution); *and see Pugh v. State,* 271 Md. 701, 704, 319 A.2d 542 (1974) (jeopardy attached after the trial judge delivered an oral synopsis of the evidence against a defendant and thereafter announced his innocence). The preliminary matter encom-

passed the indictment and the failure of the State to follow the Courts and Judicial Proceedings Article. In the instant case, the procedural error did not go to a judicial determination of guilt or innocence and, thus, appellants were never placed in jeopardy or at risk of conviction. Jeopardy did not attach.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTI-MORE CITY AFFIRMED.**

**APPELLANTS TO PAY COSTS.**